MANUEL MARTORELL, demandante y apelante, *v.* CRÉDITO Y AHORRO PONCEÑO, demandada y apelada.

No. 5094.—*Sometido:* Junio 17, 1930. *Resuelto:* Julio 21, 1931.

* NOTA: Véase el prefacio.

R. *Rivera Zayas* y F. *Rodríguez Alverio*, abogados de la apelante;
Miguel Marcos Morales, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Manuel Martorell y su esposa Pilar Torres Vázquez por escritura otorgada en 22 de septiembre de 1921 constituyeron primera hipoteca en favor del Crédito y Ahorro Ponceño, banco constituído en Puerto Rico, por $2,000 de capital, $200 para intereses que se devengaran al tipo del 10 por ciento anual, y $500 para costas y honorarios de abogado en su caso, a vencer el 30 de marzo de 1922 y gravando una finca cuya descripción, según la escritura, es como sigue:

"URBANA: Casa de concreto, de una planta, techada de hierro galvanizado, que mide 9 metros y 10 centímetros de frente por ocho metros y ochenta centímetros de fondo, con un martillo construído de concreto armado, de cinco metros y ochenta y un centímetros de largo por tres metros y setenta y tres centímetros de ancho, en un solar que mide diez y seis metros de frente por sesenta y nueve metros de fondo, o sea de una superficie de mil ciento cuatro metros cuadrados; colindando, entrando, que es el Sur, con terrenos de doña Manuela Espina Rivera de Solares; por la izquierda, que es el Norte, con casa de Manuel Pontón Santiago y terrenos de Ethervina Santiago; por el fondo, que es el Este, con el río de 'La Plata'; por el frente, que es el Oeste, con la calle de Eduardo Giorgetti, del pueblo de Comerío, en que radica."

Venció el crédito hipotecario y el Crédito y Ahorro Ponceño en 8 de enero de 1926 presentó una demanda o inició un procedimiento ejecutivo hipotecario contra el referido Martorell, fundándose en el crédito ya mencionado. Siguió la ejecución adelante y terminó subastando y rematando una finca de Martorell de que se hablará más adelante.

En su demanda en el caso presente Manuel Martorell alega

la existencia de ese procedimiento hipotecario; que en 6 de julio de 1922 Martorell, por conducto de Belisario Boscana, que era agente autorizado del demandado Crédito y Ahorro Ponceño, abonó a cuenta del crédito referido, la suma de $1,000 y le fué concedida una prórroga por los otros mil dólares hasta el 30 de marzo de 1923, previo pago de intereses; que en 8 de junio de 1923 y por conducto del mismo agente, Martorell abonó al Crédito y Ahorro Ponceño, a cuenta de capital e intereses, $603.85, quedando pendiente la suma de $500, interereses capitalizados hasta el 8 de diciembre de 1923, fecha a que fué prorrogado el crédito; que el 30 de julio de 1924 y por conducto del mismo agente Sr. Boscana, el demandante pagó al Crédito y Ahorro Ponceño a cuenta del capital, la suma de $300, quedando reducida la deuda a $200 y sus intereses; que el Crédito y Ahorro Ponceño al iniciar el procedimiento ejecutivo hipotecario, a sabiendas y maliciosamente, declaró falsamente en el hecho cuarto del escrito inicial de tal procedimiento, acerca de la cuantía líquida de la reclamación, omitiendo señalar categóricamente las cantidades ciertas cobradas por intereses o a cuenta del capital de la deuda; que en la escritura de constitución de hipoteca se había cometido un error al describir la finca objeto del contrato, apareciendo ella como de concreto armado y siendo su verdadera descripción la que sigue:

"URBANA: Una casa de una planta, construída de maderas sobre base en parte de concreto, techada de hierro galvanizado, destinada para habitación, que mide nueve metros setenta centímetros de frente por ocho metros ochenta centímetros de fondo, al que tiene anexo un martillo construído de los mismos materiales, que mide cinco metros setenta y tres centímetros de ancho, destinado para cocina y otras dependencias,"

cuya descripción es la que consta de la escritura de adquisición de tal finca por Manuel Martorell en fecha 20 de junio de 1921; que a fines del año 1923 y principios del 1924 Martorell, con dinero de la sociedad de gananciales, construyó

sobre parte del solar descrito en la escritura de constitución de hipoteca una nueva casa cuya descripción es la siguiente:

"URBANA: Edificio de una planta con un mirador, construído todo de concreto armado y techado de hierro galvanizado, situado en el pueblo de Comerío, cuyas dimensiones son la planta baja de treinta y cinco metros con veinte centímetros de fondo, por trece metros con ochenta centímetros de frente, y el mirador tiene quince metros de fondo por trece metros con ochenta centímetros de frente. Está enclavada sobre terrenos propiedad de Manuel Martorell, entonces colindando el terreno por el Oeste o frente con la calle Eduardo Giorgetti; por su derecha entrando, al Sur, con terrenos propiedad de Manuela María Asunción Espina de Solares; por su izquierda al Norte con solar y casa de Manuel Pontón Santiago y con terrenos de Ethervina Santiago Rivera; por el Este o fondo con el río de 'Plata',"

y cuyo valor es de $14,800 y renta $150 mensuales; que tal casa fué puesta en la subasta del ejecutivo hipotecario citado, rematada y adjudicada a Juan B. Carmona en tal procedimiento; que el demandante ha sufrido daños y perjuicios por consecuencia de tal procedimiento ejecutivo hipotecario y los estima en la suma de $28,000, comprendidos el importe de las casas, solar y rentas y sus sufrimientos morales.

Contestó esta demanda el Crédito y Ahorro Ponceño aceptando la existencia del ejecutivo hipotecario y negando que hubiera error en la descripción de la finca, negando la construcción de nueva obra a costa de la sociedad de gananciales o de cualquier otro fondo, y el costo asignado en la demanda, negando que esa nueva obra, si existía, hubiera sido rematada y entregada a Carmona, negando que por conducto de Belisario Boscana hubiera abonado Martorell $1,000 y cualquiera otra cantidad, negando que Boscana fuera agente autorizado o sin autorizar del Crédito y Ahorro Ponceño, negando la concesión de prórrogas y los pagos alegados en la demanda; negando que hubiera el Crédito y Ahorro Ponceño, a sabiendas y maliciosamente, o en cualquier forma, hecho declaración falsa en el escrito inicial del procedimiento ejecutivo sobre la cuantía líquida de la reclamación o sobre hecho al-

guno, negando la existencia de daños y perjuicios; alegando el *estoppel* por conducta basada en el conocimiento que Martorell tuvo de la escritura de hipoteca que le fué leída sin que rectificara la descripción, el *estoppel* por negligencia y por falsa representación, el *estoppel* por silencio y el *estoppel* de deudor que no puede alegar que es otra la finca hipotecada.

Se siguió el juicio y se presentó en él la evidencia y la corte dictó una sentencia declarando que la ley y los hechos están a favor de la parte demandada y sin lugar la demanda, con costas al demandante. Éste ha apelado de tal sentencia y presenta a nuestra consideración distintos señalamientos de error que examinaremos hasta donde fuere necesario.

■■ El primer señalamiento es como sigue:

"1.—La corte inferior incurrió en manifiesto error al declarar que la suma reclamada en el procedimiento ejecutivo por el demandado Crédito y Ahorro Ponceño en la alegación cuarta del escrito inicial señalaba categóricamente las cantidades ciertas cobradas en concepto de intereses o a cuenta del capital de la deuda, así como también declarando la misma como la cuantía líquida a que tenía derecho el acreedor hipotecario, y admitiendo evidencia sobre estipulaciones de pago fuera de lo contenido en el contrato hipotecario."

Indudablemente éste es uno de los más importantes señalamientos de error presentados en el caso.

La cláusula segunda de la escritura de 22 de septiembre de 1921 por la que se constituyó la hipoteca, dice así:

"A la seguridad del exacto solvendo de la expresada cantidad de dos mil dollars de principal, doscientos dollars por intereses y quinientos dollars para costas y honorarios de abogado, que también se compromete a satisfacer en el caso de que se proceda judicialmente al cobro de la deuda, el referido primer compareciente don Manuel Martorell Sabino, con el expreso consentimiento de su esposa también compareciente doña Pilar Torres Vázquez, constituye primera hipoteca voluntaria a favor de su mencionada acreedora 'Crédito y Ahorro Ponceño, Incorporada', sobre la finca agrupada que se describe en el precedente tercero de esta escritura, respondiendo dicha finca de las sumas que se dejan especificadas y permaneciendo con este gravamen hasta ínterin esta obligación quede totalmente extinguida."

Hemos visto cuidadosamente el escrito inicial del procedimiento hipotecario a que se hace referencia en este litigio. Insistimos en que el verdadero nombre y carácter es el de "escrito inicial," porque así lo llama la ley, que parece ha querido de una manera expresa eliminar el nombre de "demanda." En tal escrito aparece, bajo el No. 4, la siguiente manifestación:

"Que vencido este crédito hipotecario en marzo 30 de 1922, el demandado hizo abonos que lo han reducido a novecientos dos dólares y quince centavos, capitalizados intereses hasta el 30 de julio de 1925, sin que hasta la fecha el dicho demandado haya satisfecho el todo ni parte de este remanente de novecientos dos dólares y quince centavos, ni los intereses al tipo de diez por ciento anual convenido, devengados desde julio 30 de 1925 y hasta el presente."

Se trata de un procedimiento especial de carácter sumarísimo en el que se suprime gran número de los trámites del antiguo procedimiento ejecutivo, en beneficio de garantías que pudiéramos calificar de extraordinarias para el acreedor, sin que desaparezcan otras garantías que el deudor, desde la constitución de la hipoteca, venía teniendo, pero sí la mayoría de los medios de defensa que en un procedimiento corriente y ordinario podía utilizar con más o menos éxito y con mayor o menor justicia el mismo deudor. Pero la misma naturaleza extraordinaria de este procedimiento, y la falta de estos medios de defensa exigen en el acreedor un cumplimiento riguroso y exacto de los preceptos de la ley, sin omitir ninguno de los requisitos por ella exigidos, no sólo para que el procedimiento tenga todo el aspecto de legalidad necesario, sino para que el juez que ha de examinar el escrito y documentos que se le unen, se sienta también garantido al dictar el auto para requerir al deudor para el pago, en la forma drástica, rápida, que el procedimiento establece.

El artículo 169 del Reglamento para la ejecución de la Ley Hipotecaria lee como sigue:

"Con el escrito inicial del procedimiento se han de presentar:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"El escrito a que se refiere este artículo, autorizado siempre con firma de letrado, enumerará los hechos y las razones jurídicas determinantes de la certeza, la subsistencia y la exigibilidad del crédito y de la competencia del juzgado; señalará categóricamente las cantidades ciertas cobradas en concepto de intereses o a cuenta del capital de la deuda, expresando también la cuantía líquida de la reclamación que por el solo acto de iniciar el procedimiento contraerá el acreedor, sujetándose a indemnizar cuantos daños y perjuicios irrogare al deudor o a terceros interesados por malicia o negligencia en la fiel exposición de los hechos y las circunstancias que ha de apreciar el juez para autorizar el procedimiento y para continuarlo."

Es posible que surja aquí la duda de si la falta de cumplimiento de uno de estos requisitos, especialmente el que se refiere al señalamiento de cantidades ciertas cobradas por intereses o por capital, puede por sí sola originar la nulidad del procedimiento ejecutivo hipotecario. Pero si esos requisitos son necesarios para que el juez despache el auto de requerimiento, y se omite alguno de ellos, es indudable que el auto de requerimiento despachado bajo esa omisión, no puede tener efecto ni validez legal alguna. El procedimiento es estricto y el cumplimiento de las condiciones o requisitos impuestos al escrito inicial es indispensable, de tal manera que un escrito inicial en el que se omiten algunos de esos requisitos no puede ni debe ser considerado por el juez para despachar el auto de requerimiento.

La duda podría surgir acerca de si el incumplimiento de algunas de esas condiciones o requisitos no originaría más que una responsabilidad por daños y perjuicios. Pero esta responsabilidad no puede tener otra base que la de que en el escrito se omitieron circunstancias o hechos indispensables para que el juez autorizara el procedimiento y lo continuara. Cuando la ley requiere una forma especial y determinada de pedir ante un tribunal, la desviación de esa forma puede y debe, a nuestro juicio, originar la nulidad de todo procedimiento seguido sobre la base de esa incorrección.

En este caso no se expresa categóricamente, como manda la ley, las cantidades ciertas cobradas en concepto de inte-

reses o a cuenta del capital de la deuda. Para determinar la expedición del auto de requerimiento, esa expresión categórica y exacta es indispensable, ella no aparece y el auto de requerimiento basado sobre ese escrito inicial es nulo.

Se ha discutido en este caso acerca de la inclusión en cuenta de la hipoteca, de las cantidades pagadas por el Crédito y Ahorro Ponceño, por cuenta de Martorell, y por razón de seguros. Ciertamente, ése no fué uno de los extremos explícitos de la demanda. Pero esas sumas aparecen de la prueba presentada por la misma parte demandada (páginas 99 y 105, transcripción de evidencia, *exhibits* 5 y 13). En esos asientos aparecen incluídas las sumas siguientes:

"" *       *       *       *       *       *       *

"X–273   Gastos viaje a Comerío en gestiones de cobro__   $3. 50
"M–133   Pagamos en Feb. 5/23, premio póliza seguro_   57. 66
"K–169   Ints. desde Enero a Junio, 1924, 6 meses sobre
         $500, y sobre $57.66, de la póliza_____   27. 80
"K–464   Idem Idem de Junio a Dic. 1924_____   27. 80
"X–241   Pagamos en Feb. 6 del 24 renovación póliza__   57. 66
"E–63    Pagamos en Feb. 19/25, renovación póliza___   72. 08"

Esto en lo que se refiere a pagos anteriores a la ejecución del crédito hipotecario.

Ofrecida esta evidencia, aunque la demanda no hablara de la inclusión en la suma adeudada de esos conceptos, no comprendemos en qué forma podríamos negarnos a ver lo que está hiriendo tan vivamente nuestra inteligencia. Las cantidades que pudiera adeudar Martorell al Crédito y Ahorro Ponceño por concepto de pago de primas de pólizas de seguros, no pudieron nunca incluirse en la deuda hipotecaria, a los fines de la ejecución de ese crédito, porque no estaban aseguradas con la hipoteca. Véase la decisión en *Santos* v. *Crédito y Ahorro Ponceño,* 41 D.P.R. 946, en donde dijimos:

"En el caso de autos, la fraseología de la cláusula mediante la cual se creó la hipoteca es demasiado palmaria para admitir inter-

pretación. El hecho de que el deudor hipotecario, en párrafos posteriores del mismo documento asumiera ciertas obligaciones personales, no puede servir de ampliación de la hipoteca para garantizar el cumplimiento de la obligación, a falta de evidencia de esa intención. Ni el interés de la deuda para con el banco, ni el dinero satisfecho por él al notario y al registrador de la propiedad, fueron incluídos en la hipoteca. El procedimiento ejecutivo fué nulo. Este resultado no lo afecta el hecho (también señalado por el juez sentenciador) de que al prorratearse el producido de la venta entre el banco y Benigno Díaz, el banco, después de la adquisición de la finca gravada, renunció su reclamación sobre los intereses y el reembolso de cualquier gasto en concepto de honorarios del notario y del registro.''

██ Si estimamos que el procedimiento ejecutivo hipotecario fué nulo, no hay necesidad de resolver acerca de los demás señalamientos de error, con excepción del octavo, fundado en que la corte no consideró las alegaciones de la demanda y la prueba en cuanto a los daños y perjuicios.

Argumentando este error el apelante dice así:

''La Corte no entró a considerar este punto como consecuencia de la opinión a que llegó con respecto a la causa de acción. Nosotros sostenemos que habiendo errado la corte en las cuestiones fundamentales envueltas en este litigio, cometió también error al no considerar y resolver sobre la prueba presentada con respecto a los daños y perjuicios.''

En efecto: la corte en la relación del caso y opinión entendió innecesario considerar la materia de indemnización de daños y perjuicios, porque creyó que el procedimiento ejecutivo hipotecario era válido. Si no lo fué, se impone tratar ese extremo.

*Debe revocarse la sentencia apelada, en lo que se refiere a la validez del procedimiento ejecutivo hipotecario; y en lo que toca a la reclamación de daños y perjuicios devolverse a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*