Carmen Paradís y Vidal Vélez, demandantes y apelantes, *v.* Antonio Fernández Pérez y su esposa Isabel Paz, demandados y apelados.

No. 5739.—*Sometido:* Enero 19, 1933. *Resuelto:* Julio 26, 1934.

*R. Rivera Zayas* y *R. Díaz Cintrón,* abogados de los apelantes; *L. Longchamps,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Carmen Paradís y su esposo Vidal Vélez establecieron este recurso de apelación contra la sentencia que declaró sin lugar su demanda en la que solicitaron que la Corte de Distrito de Humacao declarase nulo el procedimiento sumario hipotecario No. 13537 seguido en esa corte contra ellos por Antonio Fernández Pérez.

En escritura pública de 28 de junio de 1927 los esposos Carmen Paradís y Vidal Vélez reconocieron deber a Antonio Fernández Pérez la cantidad de $500 que se comprometieron a devolverle a los seis meses, o sea, el 28 de diciembre de 1927, y a pagarle intereses del uno por ciento mensual. Para garantía de esa obligación constituyeron hipoteca sobre un solar de su propiedad sito en Caguas a favor de su acreedor por los $500 de la deuda, por $100 para intereses y por $200 para costas, desembolsos y honorarios de abogado en caso de ejecución.

El 30 de agosto de 1928 Antonio Fernández Pérez inició procedimiento ejecutivo en la Corte de Distrito de Humacao contra los expresados deudores en cobro de los $500 del capital, de $20 por intereses vencidos y no satisfechos correspondientes a los meses de abril, mayo, junio y julio, los que después se vencieran y $200 más para costas y honorarios de abogado. En ese procedimiento fué vendido en subasta pública el solar hipotecado, siendo adjudicado al acreedor ejecutante por la cantidad de $400 por no haber habido licitador en la subasta.

Para pagar al acreedor la cantidad de $339 como saldo insoluto de su crédito, la corte ordenó, a instancia del acreedor, que el márshal embargase y vendiese otros bienes de

los mencionados esposos y, en su consecuencia, el márshal embargó y vendió en subasta un crédito hipotecario de $1,500, reducido a $1,419, que grava como segunda hipoteca un solar con casa, hipotecado anteriormente por $2,500. Ese crédito hipotecario que estaba constituído por Manuel Carrasquillo fué adjudicado a la licitadora en la subasta Francisca Carrasquillo por la cantidad de $400. Con este dinero fué pagada toda la deuda de Fernández y quedó un remanente de $50 que el márshal entregó a Vidal Vélez.

Pocos meses después de lo expuesto Vidal Vélez y su esposa presentaron la demanda que ha originado la sentencia motivo de esta apelación, en la que después de hacer relación del procedimiento ejecutivo hipotecario establecido contra ellos por Antonio Fernández Pérez y de manifestar que el solar hipotecado y adjudicado al ejecutante fué vendido por Fernández a tercera persona que lo adquirió de buena fe, solicitaron la declaración de nulidad de dicho procedimiento porque fué iniciado sin estar vencida la hipoteca por haber sido prorrogado su pago: porque en ese procedimiento se cobran intereses que habían sido pagados: porque la subasta del solar fué celebrada seis días antes del que aparecía señalado en el edicto anunciando la subasta que estaba expuesto al público en la corte municipal, donde la finca radica: y porque fué embargado y vendido en subasta en ese procedimiento un crédito hipotecario de los demandantes que no había sido hipotecado a favor del ejecutante. Su petición fué que por esas nulidades se le conceda cierta cantidad de dinero como indemnización por los perjuicios que han sufrido.

Los demandados se opusieron a las reclamaciones de los demandantes.

Los demandantes presentaron también demanda complementaria contra la persona que compró en la subasta el crédito hipotecario que fué vendido y también contra el deudor de ese crédito, pero no haremos más referencia a tal demanda

porque la corte absolvió de ella a los que en la misma fueron demandados sin que esta apelación sea en cuanto a ellos.

Celebrado el juicio fué dictada la sentencia que motiva esta apelación de los demandantes, en la que no tenemos el beneficio de haber oído por escrito ni oralmente a los apelados.

██ ██ Hemos dicho antes que el pago de los $500 debía ser hecho el 28 de diciembre de 1927 y que el procedimiento ejecutivo hipotecario comenzó el 30 de agosto del siguiente año. Con respecto a si en esta última fecha estaba prorrogado el pago de la deuda, aparece de los autos la siguiente evidencia documental:

"Consta por el presente que el señor Vidal Vélez tiene una hipoteca que grava una finca suya a favor de don Antonio Fernández, $500.00, y al ser vencida pidió y cubrió una prórroga por 2 meses y vencerá el 28 de febrero de 1928—por orden de A. Fernández: (Fdo.) R. Fernández.—Hato Rey, 28 de diciembre de 1927.

"Consta por el presente que don Vidal Vélez tiene una hipoteca que grava una finca suya, $500.00, que fué vencida; a su ruego se le concedió una espera hasta el día 28 de abril en cuya fecha deberá cancelar esta deuda pues están en obras y se necesita el dinero. Hato Rey, 28 de febrero, 1928.—(Fdo.) Antonio Fernández.

"Consta por el presente que el Sr. Vidal Vélez, tiene vencida una hipoteca $500.00 a favor de don Antonio Fernández, y a su ruego se le otorga una prórroga que vencerá el 28 de julio del presente año en cuya fecha cancelará.—Hato Rey, 27 de abril de 1928.—A. Fernández, por poder, (Fdo.) Ramón Fernández.

"Agosto 24 de 1928.—Sr. don Vidal Vélez, Avenida Wilson No. 10, Santurce, P. R.—Muy Sr. mío: Don Antonio Fernández Pérez me ha instruído ejecutar la hipoteca constituída por Ud. y su esposa doña Carmen Paradís Amalbert, en escritura No. 273, de 28 de junio de 1927, ante el Notario don Andrés Mena Latorre, en garantía de un préstamo de $500.00, la cual está vencida desde el 28 de diciembre de 1927, adeudándose además los intereses de abril, mayo, junio, julio y el corriente mes.

"Por la presente le requiero para que en el preciso término de cinco días a contar de la fecha de esta carta, se sirva entrevistarse con el que suscribe y satisfacer las cantidades adeudadas a mi cliente más los honorarios por gestión de cobro, en defecto de lo cual procederé a radicar la correspondiente demanda.

"Aprovecho esta oportunidad para ofrecerme a sus gratas órdenes.

Atentamente,

"(Fdo.) L. Longchamps."

"Señor Longchamps: El Sr. Vélez me pide le conceda espera de diez o doce días en el asunto de la hipoteca, la que no tengo inconveniente en este caso todo lo demás es de Ud. y el interesado de Ud. atto.

"(Fdo.) Antonio Fernández."

"Agosto 29, de 1928."

Como evidencia testifical existe la siguiente: Vidal Vélez declaró que cuando recibió esa carta del abogado requiriéndole para el pago fué a verle inmediatamente después de llegar a su poder: que Fernández le entregó la carta para el abogado Longchamps el 29 de agosto de 1928 y el testigo se la entregó el mismo día: que Fernández manifestó al testigo que estaba conforme en concederle diez o doce días de prórroga para llevarle los intereses y que hablara con el abogado Longchamps y le diera tres o cuatro dólares por sus gestiones y le pagara los gastos que había tenido, que serían tres o cuatro dólares más, y que entonces el testigo le llevara el importe de los intereses para prorrogar la hipoteca; que el Sr. Fernández estaba conforme en conceder la prórroga pero que el testigo debía entenderse con el abogado para que le pagara los gastos. Antonio Fernández declaró que dijo a Vélez que se viese con el abogado porque él no podía decirle en seguida si le concedía la prórroga o no porque entonces el abogado le diría: "Soy yo o es usted el abogado:" que no le concedió prórroga a Vélez sino que lo que le dijo fué que fuese adonde el abogado: y que niega haberle concedido prórroga. El testigo Longchamps declaró que el 30 de agosto le entregó Vélez la carta de Fernández del día anterior y le pidió que le contestara respecto a la prórroga a que la carta se refería y el testigo le manifestó que toda vez que el ejecutivo había sido radicado en la mañana del 30 de agosto no podía concederle prórroga sin el consentimiento

expreso de su cliente en que se le instruyera para desistir de la ejecución.

Hemos copiado las tres prórrogas porque ellas demuestran por sí mismas que cuando Fernández quiso conceder prórrogas lo hizo clara y expresamente, concesión que no contiene la carta que en 29 de agosto escribió a su abogado. En esa carta no se dice, como en los anteriores documentos, que concede prórroga sino que lo que dijo a su abogado fué que no tiene inconveniente en la prórroga que se le pide y que todo lo demás es asunto de él y del interesado. Lo que dice esa carta es que no tiene inconveniente en la prórroga pero no la concede; y si agregamos lo que dijo Vélez en su declaración respecto a que Fernández le dijo que le pagara ciertas cantidades y luego llevara a Fernández el importe de los intereses para él prorrogar la hipoteca, se llega a la conclusión de que no existió la prórroga alegada por el apelante, por lo que la corte inferior no cometió el error que se le atribuye.

La cuestión de si en el ejecutivo fueron cobrados intereses que habían sido pagados, es más sencilla. Nos bastará decir que el acreedor Fernández declaró que no se le habían pagado; que el abogado Sr. Longchamps dijo como testigo que Vidal Vélez no le manifestó que no debiera esos intereses; y que Vélez no probó que los hubiera satisfecho, pues los tres documentos de prórroga que hemos copiado antes, en que él se funda como demostrativos del pago de los intereses de los cuatro meses reclamados en el ejecutivo, nada dicen del pago de dichos intereses, pues no contienen otra cosa que las prórrogas en ellos concedidas.

En 30 de octubre de 1928 la corte ordenó la venta en subasta del solar hipotecado y el anuncio que para ella libró el márshal fué publicado en el periódico "La Democracia," diciéndose que tendría lugar el 24 de noviembre de 1928. El mismo día aparece señalado en otros edictos fijados en varios sitios públicos, pero en el que se puso en la Corte Municipal de Caguas se expresa que la subasta sería el 30 de noviembre

de 1928. De los autos aparece que el márshal de la Corte de Distrito de Humacao señaló el día 24 de dicho mes y año para esa subasta y que en ese día tuvo lugar la venta del solar. También aparece que en el edicto publicado en el periódico se dice que se reclaman $200 por intereses vencidos mientras que en los demás edictos fijados al público y en todas las actuaciones del ejecutivo aparece que se reclamaban $20 por intereses.

Los errores o equivocaciones en cuanto al día de la subasta en uno de los edictos y en otro de la cantidad reclamada por intereses, entre los varios edictos que fueron fijados en distintos sitios públicos, no fueron cometidos por el ejecutante en la exposición de los hechos que según la ley debía consignar en su escrito inicial para que se ordenara el requerimiento de pago y posteriormente la venta en subasta de la finca hipotecada, sino que fueron cometidos por el márshal al dar cumplimiento a la orden de venta, por lo que no son jurisdiccionales y no es responsable de ellos el ejecutante Fernández. Por otra parte, no se demostró en el juicio que tales errores impidieran la licitación en la subasta celebrada el 24 de noviembre de 1928, por lo que no vemos motivo para anular la venta que el márshal hizo en ese día del solar hipotecado. Por analogía es aplicable el caso de *Henna et al* v. *Saurí y Subirá*, 22 D.P.R. 852, en el que declaró este tribunal que el defecto de publicar los edictos por menos tiempo del requerido por la ley no anula necesariamente la subasta.

■ ■ Réstanos resolver el otro motivo de nulidad fundado en que después de vendida la finca hipotecada ordenó la corte, a instancia del ejecutante, que fuesen embargados y vendidos en subasta otros bienes de los deudores, no hipotecados especialmente, para pagar al ejecutante Fernández los $339 que resultaron insolutos después de la venta del solar hipotecado.

Esa cuestión ha sido resuelta claramente por este tribunal. En el caso de *Porto Rican Leaf Tobacco Co.* v. *Aldrey*, 13 D.P.R. 234, en el que se trataba de un procedimiento su-

mario hipotecario, esta corte dijo, según el sumario, que la aplicación de la sección primera de la ley de marzo 9, 1905, referente a las sentencias y a la manera de satisfacerlas, en cuanto permite la venta de otros bienes del deudor para satisfacer la obligación, o aquella parte de la misma que no haya sido pagada, debe limitarse a los casos en que haya habido una sentencia ordenando el pago de la deuda, después de un juicio ordinario, y no debe extenderse su aplicación al procedimiento sumario establecido por la Ley Hipotecaria; y que no ha podido ser la intención del legislador autorizar la venta de bienes del deudor que no hubiesen sido expresamente hipotecados. En el caso de *Santos* v. *Crédito y Ahorro Ponceño,* 41 D.P.R. 946, se trataba de cobrar por el escrito inicial en un procedimiento ejecutivo cantidades que figuraban en la escritura pública pero que no fueron comprendidas en la hipoteca, y este tribunal declaró que no podían ser cobradas en ese procedimiento. Y en el caso de *Martorell* v. *Crédito y Ahorro Ponceño,* 42 D.P.R. 655, con referencia a un procedimiento sumario hipotecario, declaramos, según el sumario, que cualesquiera que fueren las cantidades que un deudor hipotecario pueda adeudar a su acreedor, ellas no pueden incluirse en la deuda hipotecaria a los fines de la ejecución del crédito si no están hipotecariamente garantizadas.

En vista de lo expuesto llegamos a la conclusión de que el procedimiento sumario ejecutivo No. 13537 que siguió Antonio Fernández Pérez contra Carmen Paradís y su esposo Vidal Vélez en la Corte de Distrito de Humacao no adolece de vicio de nulidad en cuanto a la subasta y adjudicación del solar que fué hipotecado al ejecutante, pero que es nula la orden dictada en el mismo procedimiento por virtud de la cual el márshal vendió en subasta un crédito hipotecario constituído a favor de Vidal Vélez y su esposa sobre finca distinta de la que fué objeto del procedimiento ejecutivo.

Como la corte inferior no consideró la reclamación de daños y perjuicios por creer válido todo el procedimiento seguido en este caso, cuando una parte de él es nulo, devol-

veremos el caso a la corte inferior para que resuelva en lo concerniente a los perjuicios causados por dicha nulidad. *Martorell* v. *Crédito y Ahorro Ponceño,* supra.

*La sentencia apelada debe ser revocada en cuanto no declara nula la venta en subasta del expresado crédito hipotecario, devolviendo los autos a la corte inferior para que determine el valor de los daños, si existen, causados por tal venta.*

Los Jueces Presidente Señor del Toro y Asociado Señor Hutchison disintieron por estimar que la sentencia apelada debe ser revocada en su totalidad.*