Jesús Figueroa Torres y su esposa Carmen Boneta, demandantes y apelantes, *v.* Juan Boneta Valencia, demandado y apelado.

Núm. 8204.—*Sometido:* Abril 8, 1941. *Resuelto:* Junio 9, 1941.

812

*Pedro E. Anglade,* abogado de los apelantes; *Néstor A. Boneta* y *Diego E. Ramos,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Versa este pleito sobre nulidad de un procedimiento ejecutivo hipotecario y reclamación de daños y perjuicios.

Tres causas de acción se alegan en la demanda. La primera se funda en que habiendo los esposos demandantes tomado a préstamo al demandado dos mil quinientos dólares y comprometídose a devolvérselos dentro del término de un año contado a partir del 29 de diciembre de 1924, con intereses al doce por ciento anual pagaderos por mensualidades vencidas, constituyeron hipoteca para garantizar la deuda y los intereses sobre una casa de su propiedad situada en

Arecibo destinada a panadería con una amasadora y demás efectos concernientes al ramo, y en que el demandado el 22 de junio de 1934 inició un procedimiento sumario hipotecario en ejecución de la hipoteca que es nulo porque el ejecutante alegó en el escrito inicial falsamente que se debían intereses cuando lo cierto era que los únicos intereses garantizados fueron pagados en su oportunidad.

La segunda causa de acción se basa en que la finca ejecutada ha producido rentas por valor de cinco mil cuatrocientos dólares mientras ha estado en la posesión del demandado, y la tercera en que el demandado se adueñó ilegalmente de los enseres de la panadería que no estaban gravados y que valían dos mil quinientos dólares.

En su contestación negó el demandado que no fuera cierto que los demandantes adeudaran los intereses reclamados. También negó que la finca hipotecada produjera cinco mil cuatrocientos dólares y que se adueñase ilegalmente de los enseres de la panadería.

Como defensa especial alegó que por no haberle pagado los demandantes la deuda a pesar de las prórrogas concedídasles, ejecutó la hipoteca que la garantizaba y adquirió en pública subasta la finca hipotecada, otorgándosele escritura en abril 25, 1936, dejando la finca arrendada al demandante Figueroa por veinte y un dólares semanales, teniendo que desahuciarle luego por la vía judicial por falta de pago.

En marzo 8, 1939, pidieron los demandantes que se dictara sentencia sobre las alegaciones. Su moción quedó sin resolver y al llamarse el caso para juicio en septiembre 21 siguiente, las partes estipularon someterla a la corte "con la prueba para que la decida al dictar sentencia." Celebrado el juicio, la corte—en octubre 2, 1939—declaró la demanda sin lugar, con costas, sin incluir honorarios de abogado. En su opinión, en parte se expresó como sigue:

"El hecho de que nada se dijese en el contrato sobre el tipo del interés que debía cobrarse en caso de mora, no quiere decir, como pretende el demandante, que Boneta no pudiese cobrar o requerir

por cantidad alguna al deudor, si Figueroa no pagaba el capital y continuaba en la finca después de diciembre 29 de 1925. Como no se estipuló ningún tipo de interés para caso de mora, él podía cobrar el interés legal, a partir del vencimiento del contrato. Observamos, además, que en la escritura de hipoteca no se limitó a suma determinada la responsabilidad por intereses no satisfechos, sino que la cláusula cuarta del contrato, claramente dice que la finca quedó gravada para responder del capital y de sus intereses.''

Luego, refiriéndose a las declaraciones del demandante y del demandado en el acto del juicio, manifestó:

''... La prueba demuestra que Figueroa no pagó el capital al vencimiento del contrato y continuó en posesión y disfrute de la finca por varios años después de vencida la hipoteca. Él mismo dijo en la silla testifical que siguió pagando los intereses a Boneta por algún tiempo, después del vencimiento del plazo en que debió pagar el capital. Esta admisión nos hace dar crédito a la declaración de Boneta, de que al vencer el contrato original en diciembre de 1925, ambos convinieron en seguirlo bajo las mismas condiciones y al mismo tipo de interés. Si esto fué así, el ejecutivo tampoco era nulo porque se cobrase un interés mayor que el tipo legal a partir del vencimiento, porque la voluntad de las partes de continuar indefinidamente el contrato, ratificada por los hechos, y no siendo un convenio ilícito, tenía que prevalecer.''

A nuestro juicio no está bien fundada la sentencia recurrida. Se trata de la nulidad de un procedimiento sumario hipotecario en cuya tramitación no interviene el deudor. Descansa en el escrito inicial que presenta el acreedor, en la escritura de hipoteca y en la certificación del registrador de la propiedad sobre la vigencia del gravamen. Todo debe ser cumplido en él estrictamente.

En este caso en el escrito inicial radicado en junio 22, 1934, afirmó el acreedor:

''1.      .      .      .      .      .      .      .

''2. Que el día 29 de diciembre de 1924, los demandados, por escritura número 94 otorgada ante el notario Herminio Miranda, en la ciudad de Arecibo, se reconocieron deudores del demandante Juan Boneta Valencia por la cantidad de $2,500 que se compro-

metieron a pagarle con intereses al 12 por ciento anual en el término de un año.

"3. Que el término de pago venció el día 30 de diciembre de 1925.

"4. Que en garantía del capital prestado, de los intereses y de una suma adicional de $500 para costas, gastos y honorarios de abogado en caso de reclamación judicial, los demandados constituyeron hipoteca voluntaria a favor del demandante Juan Boneta Valencia en la siguiente propiedad: (se describe).

"5. Que los demandados han dejado de pagar al demandante nueve meses de intereses, que al 1 por ciento totalizan la suma de $225.

"Que según la certificación expedida por el Registrador de la Propiedad del Distrito de Arecibo, dicho crédito hipotecario no está cancelado ni pendiente de cancelación en el Registro de la Propiedad de Arecibo.

"Por las razones expuestas, el demandante a la Corte suplica dicte auto de requerimiento para que los demandados dentro de los 30 días siguientes al día que sean requeridos por el márshal, paguen al demandante la suma de $2,500 de capital, $500 para costas, gastos y honorarios de abogado, y $225 por intereses vencidos y no satisfechos."

Las cláusulas del contrato de préstamo garantizado con hipoteca acompañado al escrito que deben tomarse en consideración, copiadas textualmente, expresan:

"*Tercero:* Manifiesta el compareciente don Jesús Figueroa Torres haber recibido en calidad de préstamo, desde antes del acto del otorgamiento de esta escritura, de manos de don Juan Boneta Valencia, la suma de dos mil quinientos dólares que se compromete a devolver en el término de un año a contar desde hoy, con intereses a razón del doce por ciento anual, pagaderos por mensualidades vencidas, conviniéndose que el deudor podría satisfacer el total de la deuda en un término de seis meses, si así lo desea.

"*Cuarto:* En garantía del pago de la obligación contraída de dos mil quinientos dólares de capital, de sus intereses al tipo estipulado y de una suma adicional de quinientos dólares para gastos, costas y honorarios de abogado en caso de reclamación judicial, don Jesús Figueroa Tórres por sí y como apoderado de su esposa doña Carmen Boneta constituye hipoteca sobre el solar y la casa des-

crita en el apartado segundo de esta escritura a favor de don Juan Boneta Valencia, mayor de edad, propietario, casado con doña Consuelo Martínez y vecino de esta ciudad.''

De la certificación del registrador también acompañada al escrito aparece la vigencia del gravamen.

El propio día 22 de junio de 1934 ordenó la corte el requerimiento del deudor. Fué practicado. No pagó. Y en agosto 29 siguiente ordenó la corte:

''Que el demandante ejecutante Juan Boneta Valencia recupere su crédito ascendente a la suma de $2,500 importe de la obligación garantizada con hipoteca, y vencida y no satisfecha, con más $225 importe de los intereses del capital hipotecario, convenidos al 12 por ciento anual, devengados y no satisfechos, o sea nueve meses de intereses, y $500 más que como penalidad convinieron pagar los demandados al demandante para costas, gastos y honorarios de abogado en caso de reclamación judicial, mediante venta de la finca urbana hipotecada,....''

La venta se verificó en octubre 22, 1934, adjudicándose la finca al acreedor, único postor que compareció a la subasta, por quinientos dólares que habrían de abonarse a su crédito, otorgándosele la correspondiente escritura de venta por el márshal en abril 25, 1936, o sea año y medio después. En junio 1, 1936, el comprador fué puesto en posesión de la finca por la vía judicial.

■ Resulta, pues, evidente que los nueve meses de intereses al doce por ciento anual que se cobraron dentro del procedimiento sumario hipotecario, no estaban garantizados por la hipoteca, y en tal virtud, aunque fuera una realidad que se debieran, no pudieron hacerse efectivos por la vía escogida a su voluntad por el acreedor.

■ El ·acuerdo verbal a que llegaron acreedor y deudor después de vencida la obligación, según la declaración del demandado en el juicio, a la que dió crédito la corte sentenciadora, no puede tener el efecto de un contrato hipotecario que, para serlo, debe otorgarse en escritura pública e inscri-

birse en el registro a fin de que, por su propia virtualidad, sirva de base al procedimiento sumario hipotecario.

■ Y en cuanto a que aunque no se pactaran expresamente, podrían siempre cobrarse los intereses de mora de acuerdo con los artículos 1053, 1054 y 1061 del Código Civil, ed. 1930, la cuestión no es nueva. En el caso de *Caraballo* v. *Registrador,* 48 D.P.R. 923, 925, ratificando y aplicando la doctrina del caso de *Goico* v. *Rodríguez et al.,* 28 D.P.R. 530, dijo esta corte:

"El contrato original no contenía disposición alguna respecto al tipo de interés en caso de que no se efectuara el pago a su vencimiento. En ausencia de tal disposición los acreedores hipotecarios, si hubiesen instado acción sobre el contrato original, hubieran podido recobrar intereses a razón del 6 por ciento anual solamente a partir de la fecha del vencimiento y de la falta de pago. Véase artículo 1061 del Código Civil (ed. de 1930); *Goico* v. *Rodríguez, et al.,* 28 D.P.R. 530; *Cook* v. *Fowler,* 14 E.R.C. 546, y otros casos citados en 33 C. J. 226, sección 111, y la decisión de la Corte Suprema de España de junio 7, 1922, 156 Jur. Civ. 464."

Véanse además *De Aldrey* v. *Registrador,* 49 D.P.R. 56, *Muñoz* v. *Nieves,* 53 D.P.R. 349 y *Cabrera* v. *Morales,* 57 D.P.R. 457.

Pero como los que se cobraron no fueron los intereses legales, siempre resulta que el ejecutante se extralimitó y su extralimitación convierte en nulo todo lo que se actuara a su instancia.

Así, en *Vázquez viuda de McCormick* v. *Gutiérrez,* 52 D.P.R. 170, 179, dijo esta corte:

"De la demanda presentada en este caso aparece que la hipoteca se constituyó por el término de once meses trece días para garantizar el pago de $1,041 como principal y 'los intereses por el término del contrato' a razón del 12 por ciento anual, pagaderos por mensualidades. Se desprende además que después de radicada la petición enmendada en el procedimiento ejecutivo la corte de distrito ordenó se expidiera un requerimiento para el pago (a) de mil dólares como saldo adeudado del principal por haber abonado la deudora a cuenta del mismo la cantidad de $41 y (b) de diez

dólares para intereses adeudados y vencidos correspondientes a la última mensualidad de octubre de 1932, por haber abonado la deudora $120 de intereses por el año de la constitución de la hipoteca y $960 de intereses de mora por convenio de las partes. Evidentemente los $10 de intereses correspondientes a octubre de 1932 no estaban cubiertos por la hipoteca, y debido a haberse incluído esa partida en la orden decretando la expedición del requerimiento de pago, el procedimiento ejecutivo era una nulidad.''

Habiéndose antes resuelto en *Santos* v. *Crédito y Ahorro Ponceño,* 41 D.P.R. 946, 948:

''La cuestión a ventilar es si las cantidades que se pretende recobrar en concepto de intereses y gastos incidentales al otorgamiento e inscripción del instrumento estaban garantizadas por la hipoteca. La corte de distrito resolvió que lo estaban.

''El juez de distrito se fundó en los artículos 114 y 147 de la Ley Hipotecaria, a saber:

'' 'Artículo 114. La hipoteca constituída a favor de un crédito que devengue interés, no asegurará con perjuicio de tercero, además del capital, sino los intereses de los dos últimos años transcurridos y la parte vencida de la anualidad corriente.'

'' 'Artículo 147. El acreedor hipotecario podrá repetir contra los bienes hipotecados por el pago de los intereses vencidos, cualquiera que sea la época en que deba verificarse el reintegro del capital; mas si hubiere un tercero interesado en dichos bienes a quien pueda perjudicar la repetición, no podrá exceder la cantidad que por ella se reclame de la correspondiente a los réditos de los dos últimos años transcurridos y no pagados y la parte vencida de la anualidad corriente.'

''Estos artículos presuponen la existencia de una hipoteca para garantizar tanto los intereses como el principal. En el caso de *Figueroa Rodríguez* v. *Ramírez,* 36 D.P.R. 919, también invocado por el juez de distrito, hubo tal hipoteca.

''En el caso de autos, la fraseología de la cláusula mediante la cual se creó la hipoteca es demasiado palmaria para admitir interpretación. El hecho de que el deudor hipotecario, en párrafos posteriores del mismo documento asumiera ciertas obligaciones personales, no puede servir de ampliación de la hipoteca para garantizar el cumplimiento de la obligación, a falta de evidencia de esa intención. Ni el interés de la deuda para con el banco, ni el dinero satisfecho por él al notario y al registrador de la propiedad, fueron

incluídos en la hipoteca. El procedimiento ejecutivo fué nulo. Este resultado no lo afecta el hecho (también señalado por el juez sentenciador) de que al prorratearse el producido de la venta entre el banco y Benigno Díaz, el banco, después de la adquisición de la finca gravada, renunció su reclamación sobre los intereses y el reembolso de cualquier gasto en concepto de honorarios del notario y del registro.''

Y puéstose de relieve, poco después, en *Martorell* v. *Crédito y Ahorro Ponceño,* 42 D.P.R. 655, 660, al aplicar el caso de *Santos,* supra, la naturaleza peculiar del procedimiento sumario hipotecario, en los siguientes términos:

''Se trata de un procedimiento especial de carácter sumarísimo en el que se suprime gran número de los trámites del antiguo procedimiento ejecutivo, en beneficio de garantías que pudiéramos calificar de extraordinarias para el acreedor, sin que desaparezcan otras garantías que el deudor, desde la constitución de la hipoteca, venía teniendo, pero sí la mayoría de los medios de defensa que en un procedimiento corriente y ordinario podía utilizar con más o menos éxito y con mayor o menor justicia el mismo deudor. Pero la misma naturaleza extraordinaria de este procedimiento, y la falta de estos medios de defensa exigen en el acreedor un cumplimiento riguroso y exacto de los preceptos de la ley, sin omitir ninguno de los requisitos por ella exigidos, no sólo para que el procedimiento tenga todo el aspecto de legalidad necesario, sino para que el juez que ha de examinar el escrito y documentos que se le unen, se sienta también garantizado al dictar el auto para requerir al deudor para el pago, en la forma drástica, rápida, que el procedimiento establece.''

Declarado nulo el procedimiento, precisa considerar y resolver el pleito en cuanto a la segunda y a la tercera causas de acción ejercitadas en el mismo.

Reclámanse por la segunda los productos dejados de percibir—alquileres a ciento cincuenta dólares mensuales.

La reclamación no quedó a nuestro juicio comprobada en toda esa extensión, pero hay un dato proporcionado por el propio demandado que fija con exactitud lo que pudo producir la finca, a saber: el contrato de arriendo de la misma por la suma de noventa dólares mensuales. De la cantidad total a satisfacer por tal concepto, deberá descontarse sin

embargo lo pagado por contribuciones según se acredite por medio de los recibos oficiales.

Por la tercera causa de acción se reclaman dos mil quinientos dólares como valor de las máquinas y enseres de la panadería instalada en la casa ejecutada que se fija en dos mil quinientos dólares.

Para probar la reclamación se presentó evidencia testifical. Declaró el demandante que el costo total del equipo lo estimaba en $1,163. Fijó antes el de cada uno de sus componentes. Y otro testigo, Angel Miranda, dedicado al negocio de panadería por veinte años, lo tasó en $1,490. Se advierte una gran diferencia entre una y otra declaración. El propio demandante dice, por ejemplo, que la amasadora que tenía un año y pico de uso, le costó al comprarla $450 y el torno cilíndrico $150. Sin embargo, su testigo perito tasa esos mismos aparatos en quinientos dólares cada uno.

El demandado se limitó a declarar que cuando el márshal le dió posesión material de la propiedad, había en ella como dos o tres paños de esos de sacos, viejos, sucios; tres o cuatro tableros; dos burros y dos amasadoras; dos artesas de amasar pan; que todo esto podría valer en la forma que estaba, no más de $25 ó $30. También declaró que luego de dársele posesión material, gastó como $500 arreglando la panadería porque había cuatro paredes, el horno destruído, el torno no servía y compró uno nuevo que le costó $300; que gastó $200 más en correas y reparaciones; que la amasadora le costó unos $60 de reparaciones y que tuvo que gastar $25 en el motor, pues son cosas viejas.

Difícil es, en tal virtud, fijar el valor exacto del equipo. Exagerada es la declaración del testigo perito del demandante y más exagerada aún la del demandado. La del demandante se refiere al costo de los aparatos cuando se compraron y admite que llevaban más de un año de uso. Bajo esas circunstancias nos parece razonable fijar en mil dólares el valor de los enseres teniendo además en cuenta que nada podrá concederse en relación con los mil quinientos dólares

reclamados por los perjuicios generales causados al demandante ya que no hay una base suficientemente clara y específica en la prueba para ello no obstante ser evidente que algunos tuvieron que causársele.

*Procede la revocación de la sentencia dictándose en su lugar otra por virtud de la cual se declare la nulidad solicitada, el reintegro de la finca ejecutada al demandante y el pago de noventa dólares mensuales a partir de junio 1, 1936, como productos de la misma, hasta su devolución, menos lo satisfecho por contribuciones al Pueblo sobre la finca, con más mil dólares, valor del equipo de la panadería, y las costas, incluyendo doscientos dólares por honorarios de abogado. La sentencia se dictará sin perjuicio del derecho del demandado a reclamar del demandante el pago de su crédito y a retirar de la casa el equipo de la panadería cuyo valor se le ordena satisfacer.*