FRANCISCO BUIL, demandante y apelante, *v.* BANCO POPULAR DE PUERTO RICO, demandado y apelado.

Núm. 9672.—*Sometido:* Mayo 3, 1948. *Resuelto:* Julio 28, 1948.

------

*Carlos D. Vázquez,* abogado del apelante; *Damián Monserrat, Jr., Gabriel de la Haba y Rafael Baragaño, Jr.,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Tomás Cortijo suscribió en 25 de agosto de 1924 un pagaré que textualmente copiado, reza así:

"Por $4,000.—A 6 Meses Plazo. Intereses al 12% Anual.— Pagaré en esta ciudad dentro del plazo de seis meses contados desde esta fecha, al Banco Popular de Puerto Rico de esta plaza, o a su orden, la suma de cuatro mil dollars en dinero efectivo, que le debo por un préstamo de igual cantidad que del mismo Banco he recibido en el día de hoy, a mi entera satisfacción. Esta obligación devenga intereses al doce por ciento anual. Toda prórroga que para su pago se conceda (sic) voluntariamente su tenedor, se anotará en este mismo documento, lo que bastará para su validez. En el caso de reclamación judicial para el cobro, serán de mi cuenta y a mi cargo los gastos, costas y honorarios del abogado del acreedor o parte demandante.—San Juan, P. R., 25 de agosto de 1924. Tomás Cortijo."

En garantía del mismo, él y su esposa otorgaron en igual fecha a favor del indicado Banco una escritura, en la cual se hizo constar que para asegurar el pago de la referida obligación ellos hipotecaban una finca de su propiedad.

Como el deudor no cumplió con los términos de la obligación, en 25 de abril de 1934 el Banco Popular de Puerto Rico radicó ante la extinta Corte de Distrito de San Juan un procedimiento sumario sobre ejecución de hipoteca. Después de hacer ciertas alegaciones esenciales en procedimientos de esta naturaleza y de indicar que aunque la finca hipotecada permanecía aún inscrita a nombre de Cortijo y su esposa, Andrés Quirós Santiago la había adquirido por escritura pública, como resultado de una subasta, el Banco Popular alegó en su escrito inicial que según se desprende de la certificación librada por el Registrador de la Propiedad de San Juan, Sección Primera, con fecha 22 de abril de 1934, la inscripción de hipoteca a favor del Banco demandante sobre la finca descrita no está cancelada ni pendiente de cancelación según el diario; que la finca no está sujeta a gravámenes anteriores y que como cargas posteriores existen: (a) una hipoteca a favor de Juan B. García Méndez por $2,500, constituída en 25 de enero de 1928; (b) según

la inscripción 19 al folio 12 del tomo 133 de Santurce Norte, una hipoteca a favor del tenedor o endosatario de un pagaré a la orden por $3,000, otorgado en 29 de junio de 1929; (c) una anotación de embargo por $1,500 de principal, intereses legales y costas; y (d) una hipoteca por $1,500 con intereses al 6 por ciento anual y crédito adicional de $200, según escritura de 6 de octubre de 1932; que la hipoteca se encuentra vencida y es exigible; que los demandados se encuentran adeudándole los intereses sobre dicho préstamo a razón del 12 por ciento anual desde mayo 25 de 1929 a febrero 23 de 1934, o sea cuatro años ocho meses que ascienden a $2,280, "pero como existen terceros, de acuerdo con la ley, sólo son exigibles en estos procedimientos, los intereses vencidos y correspondientes a las dos últimas anualidades y la corriente, que se computarán desde el 25 de mayo de 1931 a 25 de febrero de 1934, ascendente a la suma de $1,320''; que el Banco ejecutante ha satisfecho al Tesorero de Puerto Rico por cuenta de la finca contribuciones ascendentes a la suma de $1,499.42; y que en vista de lo anterior los demandados se encuentran adeudando al Banco demandante las siguientes cantidades: $4,000 por el importe del capital; $1,320 por intereses vencidos desde el día 25 de mayo de 1931 hasta el 25 de febrero de 1934; $300 por indemnización para costas, gastos y honorarios; y $1,499.42 por contribuciones pagadas al Tesoro Insular. Acompaña a su petición, entre otros documentos la referida certificación de 22 de abril de 1934, acreditativa de que la hipoteca está vencida, no ha sido satisfecha ni cancelada, ni se halla pendiente de cancelación según el diario. Finalmente se obligó a indemnizar cuantos daños y perjuicios irrogare a los demandados o a terceras personas por malicia o negligencia en la fiel exposición de los hechos.

En 25 de abril de 1934 se expidió por la corte el correspondiente auto de requerimiento. En éste se ordena se proceda a requerir a los demandados Tomás Cortijo y a su

esposa Paula Román, para que dentro del término de 30 días satisfagan al Banco demandante las sumas reclamadas y se les apercibe de que si no efectúan dicho pago dentro del referido término se procederá a la venta en pública subasta de la finca hipotecada. También se ordena en dicho auto que se notifiquen los procedimientos a Juan B. García Méndez, acreedor posterior, así como a los tenedores de los siguientes pagarés: uno por $3,000, sus intereses y $500 para crédito adicional; y otro por $500 de principal y sus intereses. En el diligenciado del mandamiento expedido, el márshal expresa que cumplimentó el mismo requiriendo personalmente a Cortijo y su esposa y al demandado Quirós Santiago; y que notificó personalmente al acreedor posterior Juan B. García Méndez. Nada dice en dicho diligenciado respecto a otros acreedores posteriores.

Vencido el plazo de 30 días fijado en el auto de requerimiento, en 6 de junio de 1934 se archivó por el Banco una moción solicitando se dictara la oportuna orden mandando a vender en pública subasta la finca hipotecada y en igual fecha la corte así lo decretó.

También aparece de los autos un edicto de subasta suscrito en 18 de julio de 1934 por el márshal de la Corte de Distrito de San Juan, en el que después de expresarse que en armonía con el mandamiento librado se venderá en pública subasta la finca hipotecada y de indicarse el sitio, la fecha y la hora en que se celebrará la venta, se dice: "Y para conocimiento de las partes interesadas y del público en general y a fin de que sirva de notificación especial a don Juan B. García Méndez . . . . ; a don Angel A. Vázquez, que . . . . se dice que es dueño y tenedor de un pagaré hipotecario que por $3,000 sus intereses y $500 de crédito adicional afecta a un solar de la finca principal, según la inscripción 19 al folio 12 del tomo 33 de Santurce Norte, *y si no lo fuere, a la persona que resulte ser tenedora de dicho documento, y*" etc. (Bastardillas nuestras.) En el Acta de Subasta suscrita por el márshal en 10 de agosto de 1934 se

dice que "Anunciada en alta voz en los pasillos de la Corte la apertura de dicha subasta, se ofreció la venta de la finca anteriormente descrita, y estando presente don Angel A. Vázquez, se le notificó dicho acto como supuesto tenedor de un pagaré hipotecario que como gravamen posterior afecta la finca objeto de esta subasta, manifestando que no era el tenedor de dichos documentos y que no tenía interés alguno en la finca; y no habiendo concurrido licitador alguno, adjudiqué al demandante en el presente caso Banco Popular de Puerto Rico, que por conducto de su abogado ofreció por dicha finca la suma de cuatro mil dólares para aplicar al pago de la hipoteca de cuya ejecución se trata; . . . . "

Más tarde, el Banco radicó moción solicitando la cancelación de los gravámenes posteriores, entre los cuales figuraba la hipoteca a que se hace mención en la inscripción 19 al folio 12 del tomo 133 de Santurce, a favor del tenedor del pagaré de $3,000 a que ya nos hemos referido. La corte el mismo día dictó una orden accediendo a lo solicitado y en el Registro se hicieron las cancelaciones interesadas.

Así las cosas, en 29 de marzo de 1944 Francisco Buil acudió ante dicha corte de distrito con una demanda sobre nulidad de procedimiento ejecutivo y otros extremos, en la que luego de alegar que es tenedor del pagaré de $3,000 otorgado por Cortijo en 29 de junio de 1929, a que ya hemos hecho mención, y de exponer las razones por las cuales a su juicio el procedimiento ejecutivo seguido por el Banco demandado es nulo, solicita sentencia con los siguientes pronunciamientos: (A) declarando nulo todo lo actuado en el referido procedimiento ejecutivo hipotecario, incluyendo el auto de requerimiento de pago, la orden de remate, la adjudicación de la finca y la orden por la cual se dispuso que el Registrador cancelara la hipoteca posterior de $3,000, con sus intereses al 1% mensual y $500 de crédito ejecutivo, garantizadora del pagaré al portador propiedad del demandante; (B) condenando al Banco demandado a pagarle la

suma de $7,350 con intereses legales a contar de la interposición de la demanda; y (C) las costas y honorarios de abogado.

Fué el pleito a juicio y la corte inferior dictó sentencia declarando sin lugar la demanda y condenando al demandante al pago de las costas y $250 para honorarios de abogado. El demandante ha apelado y en apoyo de su recurso ha señalado cuatro errores que serán discutidos en el curso de esta opinión.

 Sostiene en sus señalamientos primero y tercero que fué un error de la corte inferior el no declarar nulo o inexistente, por falta de jurisdicción, el auto de requerimiento de pago librado en el procedimiento ejecutivo; el haber tomado conocimiento judicial de documentos sobre los cuales no hubo alegación ni fueron sometidos en evidencia; y el estimar que el demandante, como desconocido acreedor hipotecario posterior, fué notificado del procedimiento ejecutivo. No tiene razón el apelante. Por disposición expresa del artículo 171 del Reglamento para la Ejecución de la Ley Hipotecaria *"Cuando en las certificaciones del registro de la propiedad consten los domicilios de las personas interesadas en las responsabilidades que se hubieran inscrito después del derecho del actor,* el juez mandará, a la vez que el requerimiento de pago, que se intente la notificación del auto a dichas personas interesadas en aquellos domicilios si en ellos fueren habidas." (Bastardillas nuestras.) Conforme ya se ha indicado, en el auto de requerimiento se ordenó se requiriera a los demandados Tomás Cortijo y su esposa Paula Román y a Andrés Quirós Santiago, así como que se notificaran los procedimientos a Juan B. García Méndez, acreedor posterior y a los tenedores de pagarés por $3,000 y $500. Luego de referirse a los edictos que han de publicarse en estos procedimientos, provee el artículo 172 del Reglamento que:

"Estos edictos señalarán el día, hora y sitio del remate, y servirán también para hacer saber la subasta a los acreedores que tengan inscritos o anotados sus derechos sobre los bienes con posterioridad al del ejecutante, y con los cuales no hubiere tenido efecto la notificación que prescribe el párrafo final del artículo 171, debiendo expresarse, al efecto, los nombres de estos interesados, según resulten de la certificación del registro, para que puedan concurrir a la subasta si les conviniere."

Si bien, como ya hemos indicado, con el escrito inicial se acompañó una certifiación librada por el Registrador de la Propiedad con fecha 22 de abril de 1934, sin embargo en ella se hace referencia a certificaciones expedidas con anterioridad y se dice: "que todos los extremos apuntados en las certificaciones de referencia a la presente fecha se encuentran en toda su fuerza y vigor." Esas certificaciones anteriores no han sido elevadas a este Tribunal y las mismas serán objeto de discusión ulterior en el curso de esta opinión en relación con otro punto suscitado. Si en las certicaciones libradas al efecto por el registrador constan los domicilios de los acreedores posteriores, la ley exige que se les notifique el auto de requerimiento. Si no constan, no es necesario, desde luego, notificarles del mismo. No obstante, en este último caso deberá notificárseles por edictos. Lo que se interesa es que en alguna forma los acreedores posteriores estén enterados de los procedimientos " . . . . por si quieren satisfacer, antes del remate, el crédito, intereses y costas aseguradas con la hipoteca de cuya ejecución se trata." Barrachina, Derecho Hipotecario y Notarial, Vol. 3, pág. 163. Empero, como en la única certificación presentada no aparecen los domicilios de las personas interesadas y toda vez que no sabemos si en las otras certificaciones a que en ella se hace referencia constaban o no los domicilios de los acreedores posteriores, no podemos resolver que no se dió cumplimiento a lo preceptuado por los referidos artículos. (Del edicto aparece que los acreedores posteriores fueron a virtud del mismo notificados de los procedimien-

tos.) La presunción controvertible es que la ley ha sido acatada. Artículo 102, inciso 32, de la Ley de Evidencia. Al demandante incumbía poner a este Tribunal en condiciones de resolver las cuestiones por él planteadas y no habiéndolo hecho así, su contención a este respecto debe ser desestimada.([1])

 Durante el curso del juicio el demandado ofreció en evidencia tan sólo la certificación suscrita por el Registrador de la Propiedad en 22 de abril de 1934 a que tantas veces hemos hecho referencia. No adujo en evidencia, sin embargo, las certificaciones expedidas por el mismo Registrador en 16 de agosto de 1933, 13 de diciembre del mismo año y 9 de marzo de 1934, relativas a la hipoteca ejecutada de $4,000. En la de 22 de abril el Registrador dice expresamente: "con vista del Registro y de las tres certificaciones expedidas . . ." en las fechas indicadas y "que todos los extremos apuntados en las certificaciones de referencia a la presente fecha se encuentran en toda su fuerza y vigor." Como hemos visto, sostiene ahora el apelante que fué un error del juez de distrito tomar conocimiento judicial de esas tres certificaciones, a pesar de que no hubo alegación respecto a las mismas y no obstante el hecho de que ellas no fueron sometidas en evidencia. Tampoco asiste la razón al demandante a este respecto. Dichas tres certificaciones fueron acompañadas al escrito inicial como parte integrante del mismo y de la certificación de 22 de abril de 1934. El demandante sabía esto y a pesar de ello sólo presentó la certificación indicada.

Cuando se ofrece en evidencia parte del expediente que está ante el mismo tribunal que oye la causa—en este caso se presentaron innumerables documentos que figuraban en el expediente del ejecutivo sumario seguido por el Banco contra Cortijo y otros,—éste puede tomar conocimiento judicial

([1])Cf. Ferrer v. Registrador, 44 D.P.R. 277; Nazario Figueroa v. Registrador, 36 D.P.R. 773; Henna et al. v. Saurí y Subirá, 22 D.P.R. 836; y Fernández & Cía. v. Ramírez, 8 D.P.R. 98.

de otras partes del récord, especialmente cuando como en el presente caso uno de los documentos aducidos hace referencia a otros que figuran en el mismo expediente y expresa que esos otros complementan el documento así ofrecido. En *Sewell* v. *Johnson,* 165 Cal. 762, 770, se dice que: ". . . ciertamente no puede aducirse razón válida alguna por la cual una corte no pueda tomar conocimiento judicial en una apelación pendiente, de su propia actuación en otro caso que está íntimamente relacionado con tal apelación y que surge con posterioridad a la interposición de la misma, cuando es evidente que a menos que se tome ese conocimiento judicial se cometería una injusticia con el apelante." Véase también *Gay* v. *Gay,* 146 Cal. 237, 241.

En el volumen IX de Wigmore *on Evidence,* 3ra. Edición, sección 2579, se dice: "Los procedimientos ante una corte los constituyen los autos (*records*), y esta palabra originalmente tomó su nombre de la memoria judicial (*recordari*) que podía ser invocada para anular procedimientos anteriores. No obstante, hoy en día parece poco razonable, teniendo en cuenta el principio general de conocimiento judicial (ante, sección 2565), afirmar que existe verdadero conocimiento judicial de determinados litigios anteriores . . . . Empero, por razones de conveniencia . . . . con frecuencia se hallan cortes que toman conocimiento judicial del tenor o efecto de parte de un procedimiento judicial, sin exigir la presentación formal de prueba . . . . Frecuentemente se hace con parte de los autos en el *mismo procedimiento,* o en *un estado anterior de la misma controversia;* con menos frecuencia se hace con los autos de un *litigio distinto,* especialmente cuando éste se tramita en otra corte." Véase también Volumen VII, Wigmore *on Evidence,* sección 2104, pág. 502, donde se dice que: "cuando un documento ofrecido en evidencia se refiere a otro escrito, este último debe ser igualmente ofrecido en evidencia al mismo tiempo, siempre que ese otro escrito sea de tal naturaleza que lo haga necesario para entender plenamente el efecto del documento ofrecido.

El mismo principio sería aplicable a otro escrito a que no se hace referencia expresamente, pero que es necesario por la naturaleza de los documentos para la debida interpretación del documento ofrecido.''

No fué, por tanto, un error tomar conocimiento judicial de las tres certificaciones a que se hace mención en la librada por el Registrador en 22 de abril de 1934.

 En su segundo señalamiento sostiene el apelante que al Banco demandado le fueron concedidos intereses de mora no convenidos. Cuando en un procedimiento ejecutivo sumario se cobran cantidades en exceso de las debidas, el procedimiento resulta nulo de toda nulidad. *Torres* v. *Fernández,* 65 D.P.R. 622; *Vázquez Vda. McCormick* v. *Gutiérrez,* 52 D.P.R. 170; *Martorell* v. *Crédito y Ahorro Ponceño,* 42 D.P.R. 655. Esto sin duda es así por la razón primordial de que, estrictamente hablando, el procedimiento resulta ser uno *ex parte* y de que el auto de requerimiento que se expide como consecuencia de la petición inicial y de los documentos a ella acompañados tiene el alcance de una sentencia. *Sucn. Mandés* v. *Sucn. Agüero,* 42 D.P.R. 684.

Según el artículo 114 de la Ley Hipotecaria ''La hipoteca constituída a favor de un crédito que devenga interés, no asegurará con perjuicio de tercero, además del capital, sino los intereses de los dos últimos años transcurridos y la parte vencida de la anualidad corriente.''(2)

---

(2)Véanse también los artículos 145 y 147 de la misma ley, los que proveen:

''Artículo 145.—No se considerará asegurado con la hipoteca el interés del préstamo en la forma que prescribe el artículo 114, sino cuando la estipulación y cuantía de dicho interés resulten de la inscripción misma.''

''Artículo 147.—El acreedor hipotecario podrá repetir contra los bienes hipotecados por el pago de los intereses vencidos, cualquiera que sea la época en que deba verificarse el reintegro del capital; mas si hubiere un tercero interesado en dichos bienes a quien pueda perjudicar la repetición, no podrá exceder la cantidad que por ella se reclame de la correspondiente a los réditos de los dos últimos años transcurridos y no pagados y la parte vencida de la anualidad corriente.''

En el escrito inicial, conforme ya hemos visto, se hace constar de manera paladina que "como existen terceros, de acuerdo con la ley, sólo son exigibles en estos procedimientos, los intereses vencidos y correspondientes a las dos últimas anualidades y la corriente, que se computarán desde el 25 de mayo de 1931 a 25 de febrero de 1934, ascendente a la suma de $1,320." A este respecto, el aquí demandado hizo en su petición inicial una fiel exposición de la ley, pero calculó los intereses por todo ese tiempo al tipo del 12 por ciento anual. Se hace, en su consecuencia, necesario determinar si el Banco demandado tenía derecho a calcular y cobrar los intereses a ese tipo o si debió calcularlos al 6 por ciento.

En el pagaré otorgado por Cortijo a favor del Banco, que aparece al principio de esta opinión, se expresa claramente que "esta obligación devenga intereses al 12 por ciento anual" y que "toda prórroga que para su pago se conceda (sic) voluntariamente su tenedor, se anotará en este mismo documento, lo que bastará para su validez." A juzgar por la prueba aducida, especialmente por la certificación suscrita por el Registrador de la Propiedad de San Juan en 27 de diciembre de 1944, no se concedió prórroga alguna para el pago de la obligación. La Ley de Usura núm. 5 de 17 de agosto de 1933, Sesión Extraordinaria (pág. 27) no desempeña, en este caso, por ende, papel de clase alguna.[3] No obstante, el documento reseñado demuestra con toda claridad que si bien en él se estipularon intereses al 12 por ciento por el término de su vigencia, nada se dijo en relación con los de mora, y es doctrina establecida desde largo tiempo ha que cuando en un documento de esta naturaleza no se estipulan intereses de mora solamente podrán cobrarse los legales al tipo de 6 por ciento. *Vega* v. *García, infra; Figueroa* v. *Boneta*, 58 D.P.R. 811. Habiéndose co-

---

[3] *Cf. Vega* v. *García*, 61 D.P.R. 804 y *Toscano* v. *Pomales*, 60 D.P.R. 335.

brado intereses sobre los aludidos $4,000 desde el 25 de mayo de 1931 al 25 de febrero de 1934 al tipo del 12 por ciento, resulta incuestionable que en el ejecutivo sumario instado por el Banco Popular de Puerto Rico contra Tomás Cortijo, Paula Román y Andrés Quirós Santiago se incluyeron por tal concepto cantidades en exceso y que el mismo resulta, en su consecuencia, enteramente nulo. Siendo nulo dicho procedimiento, el aquí demandante, quien como se ha dicho era tenedor de un pagaré al portador, garantizado con hipoteca debidamente inscrita, resultó perjudicado al cancelarse su crédito posterior.

■ Ahora bien, en relación con la acción de daños y perjuicios entablada por el demandante, sostiene el demandado que la misma ha prescrito. Está equivocado. Ya este Tribunal ha resuelto en innumerables casos que la acción de daños y perjuicios proveniente de la nulidad de un ejecutivo sumario es una *ex contractu* que prescribe a los 15 años. *F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 D.P.R. 525, 536. En ese caso, citándose de Manresa, tomo 12, páginas 600–601, edición de 1907, se dice lo siguiente:

". . . . . la única especie de culpa y omisión o negligencia que puede ser y es materia del presente capítulo, es la segunda, o sea la que sin la existencia de una obligación anterior, *y sin ningún antecedente contractual*, produce un daño o perjuicio que tiene su origen en una acción u omisión culpable sólo civilmente; es decir, que siendo ilícita no revista, sin embargo, los caracteres de un delito o falta por no estar penada por la ley." (Bastardillas nuestras.)

Éste es un caso en que si bien el demandante no contrató directamente con el Banco demandado, la acción surge de un antecedente contractual, cual es el contrato de préstamo e hipoteca que existió entre el Banco y Cortijo.

■ Lo que el aquí demandante interesa, según demuestran las alegaciones y la prueba, es que declarado nulo el procedimiento ejecutivo sumario se le concedan daños y perjuicios. Cf. *Arvelo* v. *Banco Ter. y Agrícola de P. R.*,

25 D.P.R. 728. No hay duda de que en su carácter de acreedor posterior con título inscrito, el demandante tiene derecho a entablar semejante acción. A este respecto dispone el artículo 169 del Reglamento para la ejecución de la Ley Hipotecaria que en "El escrito a que se refiere este artículo, autorizado siempre con firma de letrado enumerará los hechos . . . . ; señalará categóricamente las cantidades ciertas cobradas en concepto de intereses . . . ., expresando también la cuantía líquida de la reclamación que por el solo acto de iniciar el procedimiento contraerá el acreedor, *sujetándose a indemnizar cuantos daños y perjuicios irrogare al deudor o a terceros interesados por malicia o negligencia en la fiel exposición de los hechos y las circunstancias que ha de apreciar el juez para autorizar el procedimiento y para continuarlo."* (Bastardillas nuestras.) Dispone, por otra parte, el artículo 175 del mismo cuerpo legal que: "Los procedimientos sumarios . . . ., no podrán suspenderse por medio de incidentes ni por otro alguno, a instancia del deudor, del tercer poseedor, ni de ningún otro que se presente como interesado, salvo en los" casos que enumera, expresando después que: "Todas las demás reclamaciones que puedan formular, así el deudor como los terceros poseedores y los demás interesados, incluso las que versaren sobre nulidad del título o de las actuaciones, o sobre vencimiento, certeza, extinción o cuantía de la deuda, se ventilarán en el juicio plenario que corresponda, sin producir nunca el efecto de suspender ni entorpecer el procedimiento ejecutivo; . . . .". Indiscutiblemente, un acreedor posterior con su derecho inscrito resulta ser un tercero, o por lo menos un interesado en la legalidad o pureza de los procedimientos. Sobre este punto específico nos dice Morell en sus Comentarios a la Legislación Hipotecaria, Volumen 3, edición de 1917 (págs. 717, 718 y 720), lo que pasamos a copiar en seguida:

"Combinando el art. 114 con el 145 y el 147, resulta que si en la inscripción de hipoteca no consta que se hayan estipulado intereses o no se expresa su cuantía, la finca hipotecada no responde en perjuicio de tercero de intereses algunos, *o solo responde de los legales.* Si consta la estipulación y su cuantía (6, 8 ó 12 por 100), rige el art. 114. Y si se hipotecaron expresa y especialmente las fincas por determinada cantidad para el pago de intereses, esta hipoteca especial perjudica en absoluto a todo tercero.

*"Tercero, en el art. 114, es todo el que no ha intervenido como parte en la hipoteca inscrita, ya adquiera el dominio de la finca, ya otro cualquier derecho real; pero siempre a condición de que inscriba el derecho* que adquiere."

" .

" . . . . *Los terceros pueden clasificarse en dos grupos: uno el de los terceros adquirentes de la finca; otro el de los que adquieren sobre ésta un derecho real distinto al dominio o la posesión, por ejemplo, una hipoteca.*

" .

*"El acreedor personal* que anota un embargo, por ejemplo, *no es* tampoco, en el otro aspecto de la cuestión, *el tercero a que se refiere el art. 114,* y de que habla el 25 de la misma ley, y *lo es en cambio el acreedor hipotecario cuyo título produce, una vez inscrito, todos sus efectos, aun contra acreedores singularmente privilegiados por la legislación común."* (Bastardillas nuestras.)

Véanse también *Henna et al.* v. *Saurí y Subirá,* supra; Morell, obra citada, Vol. 4, pág. 119; y Galindo y Escosura, Vol. 3, pág. 236.

El segundo error fué claramente cometido, y resultando ser el cuarto señalamiento una secuela de los anteriores, se hace innecesario discutir el mismo.

*Debe revocarse la sentencia apelada y devolverse el caso al Tribunal inferior a los fines de determinar el monto de los daños y perjuicios a que tiene derecho el demandante.*

El Juez Asociado Sr. De Jesús no intervino.