Sucn. de Don Alfredo Ramírez de Arellano, Etc., peticionarios, *v.* Tribunal Superior de Mayagüez, Hon. Ángel Fiol Negrón, Juez, demandado; Livia del Moral Torruellas, interventora.

Número 2332.
*Sometido:* 17 de junio de 1957. *Resuelto:* 28 de junio de 1957.

*José A. Poventud, Francisco Parra Toro, Carlos García Méndez, José Rosario Gelpí* y *Amador Ramírez Silva,* abogados de los peticionarios; *Enrique Báez García,* abogado de la interventora, demandante en el pleito principal.

El Juez Asociado Señor Saldaña emitió la opinión del Tribunal.

Este caso plantea, igual que el de *Piovanetti* v. *Vivaldi* (resuelto también en el día de hoy), una cuestión relativa al cobro de intereses en el procedimiento sumario de ejecución hipotecaria. Aquí las partes convinieron en el contrato de

préstamo, garantizado por hipoteca, que se devolvería el capital "... *en el término de tres años, a contar de la fecha de esta escritura* (15 de enero de 1927)... *devengando el préstamo durante su vigencia intereses al nueve por ciento anual pagaderos por mensualidades vencidas*". Debemos resolver si dicha estipulación respecto a intereses, contrario a la que fué objeto de consideración en *Piovanetti*, permitía al ejecutante hipotecario reclamar en el procedimiento sumario intereses al nueve por ciento anual después del vencimiento del débito, es decir, después del término o plazo del contrato de préstamo, o si sólo procedía la reclamación de dichos intereses al tipo legal del seis por ciento anual a partir del momento en que el deudor incurrió en mora. Por las razones que exponemos en esta opinión, creemos que sólo cabía exigir el pago de los intereses legales.

■■ En la escritura de hipoteca, que se otorgó el 15 de enero de 1927, Francisco del Moral reconoció hallarse adeudando a Francisca Sánchez Chavarry la suma de $6,000 "... *que en calidad de préstamo recibe en este acto y cuya suma se compromete a devolver a su acreedora, en el término de tres años, a contar de la fecha de esta escritura y vencibles en igual día y mes del año 1930; devengando el préstamo durante su vigencia intereses al nueve por ciento anual pagaderos por mensualidades vencidas*". En garantía de la anterior obligación y de un crédito adicional de $600 para gastos, costas y honorarios de abogado, en caso de reclamación judicial, el deudor constituyó hipoteca a favor de su acreedora que fué debidamente inscrita en el Registro de la Propiedad. Incumplida la obligación de pago, la acreedora entabló acción ejecutiva sumarísima para hacer efectivos los créditos así garantizados. Reclamó el pago de $6,000 de principal, $600 de crédito de gastos, costas y honorarios de abogado y $1,596 de intereses computados al nueve por ciento anual desde el 15 de enero de 1931 (un año después de vencido el préstamo) hasta el 29 de diciembre de 1933. Reclamó

además el pago de intereses al nueve por ciento anual sobre el capital del préstamo desde la fecha en que se radicó el escrito inicial (30 de diciembre de 1933) hasta su total pago. Habiéndose cumplido con todos los requisitos del procedimiento sumario, la finca hipotecada se sacó a pública subasta para el cobro de las referidas cantidades, adjudicándose la misma al mejor postor por una cantidad que incluía el capital, el crédito de $600 y los referidos intereses.

En el pleito sobre nulidad de dicha ejecución hipotecaria, los demandados (aquí peticionarios) solicitaron sentencia sumaria a base de que, con arreglo a las estipulaciones del contrato de préstamo y de la hipoteca, la acreedora ejecutante tenía derecho a reclamar intereses credituales al nueve por ciento anual desde la fecha del vencimiento del plazo contractual hasta el total solvendo de la deuda. El tribunal recurrido declaró sin lugar dicha moción por el siguiente fundamento: "Es cierto que no existe controversia entre las partes sobre los hechos materiales en que podría fundarse la conclusión de si la ejecución hipotecaria en el caso de autos es o no nula por el motivo que se alega en la demanda. También es cierto que de llegarse a la conclusión de que dicho procedimiento de ejecución no es nulo podría dictarse sentencia desestimando la acción sin necesidad de considerar las reconvenciones y las demás cuestiones planteadas por las partes. Empero, los hechos del caso no establecen que los demandados tengan derecho a que se desestime la acción *como cuestión de ley* visto lo resuelto en los casos de *Figueroa* v. *Boneta,* 58 D.P.R. 811; *Vega* v. *García,* 61 D.P.R. 804; y *Buil* v. *Banco Popular,* 69 D.P.R. 254." A los fines de revisar la resolución aludida, expedimos un auto de *certiorari.*

Para desentrañar qué quiere decir la frase "vigencia del préstamo", es necesario tener en cuenta el contexto en que las partes la usaron. Aquí el deudor hipotecario se obligó a devolver el capital del préstamo en un plazo de tres años. Inmediatamente después se comprometió a pagar intereses en

virtud de la fraseología ". . . devengando el préstamo durante su vigencia intereses al nueve por ciento anual pagaderos por mensualidades vencidas". La palabra *vigencia* en esas circunstancias se refiere al plazo o término del contrato de préstamo, que los interesados habían fijado en tres años. La fecha fija de vencimiento del débito, es decir, la fecha en que surgió la obligación de pago con arreglo a lo pactado entre las partes, determina aquí el límite de la vigencia del "préstamo", que en forma elíptica significa "el contrato de préstamo".

Es verdad que, para otros fines, el contrato sólo se extingue por rescisión, nulidad o cualquiera de las causas generales de la extinción de las obligaciones, siendo la normal el pago o cumplimiento. Pero el caso aquí contemplado es distinto, porque se fijó un término para la ejecución del contrato con carácter esencial. Al llegar la fecha fijada por ambas partes, de común acuerdo, cesaron los efectos del mencionado contrato a los fines del pacto sobre intereses. De ahí en adelante, independientemente de que el deudor cumpliese o no con su obligación, no había pacto expreso relativo a intereses. La voluntad de las partes, en el caso actual, fué obviamente acordar el pago de intereses únicamente por el tiempo de la duración del contrato. Constituiría una distorsión del sentido normal de las palabras decir que vigencia del préstamo aquí significa "hasta el total reintegro o pago definitivo de la deuda", o "mientras dure la deuda", pues la obligación tenía una fecha de vencimiento fija. Cf. *Buil* v. *Banco Popular*, 69 D.P.R. 254, 265 (1948).

Así pues, el acreedor reclamó en el ejecutivo sumario intereses al nueve por ciento anual después de vencido el plazo o término del contrato de préstamo, cuando en realidad sólo podía cobrar intereses legales desde la fecha en que el deudor incurrió en mora, ya que no hubo pacto expreso relativo a intereses al 9% después del vencimiento del débito o por concepto de mora. Es indudable que dicha actuación vicia de nulidad el procedimiento hipotecario. Véase *Piovanetti* v. *Vivaldi*, ante pág. 108 (1957) y los casos allí citados.

Siendo ello así, el tribunal a quo no incurrió en error alguno al dictar la resolución recurrida, declarando sin lugar la moción de sentencia sumaria presentada por los peticionarios. *Debe anularse el auto expedido y devolverse el caso al Tribunal Superior para ulteriores procedimientos compatibles con lo expresado en esta opinión.*

El Juez Asociado Sr. Belaval, por las razones que expuso en sus opiniones en los casos de *Valcourt* v. *Iglesias*, 78 D.P.R. 630, 631–645 y de *Piovanetti* v. *Vivaldi* (resuelto en el día de hoy), disiente.

El Juez Asociado Sr. Marrero no intervino.