RAMÓN VALCOURT QUESTEL, demandante y apelante, *v.* JOSÉ ALFREDO, LORENZO, EUGENIO, CARMEN y ESTELA IGLESIAS y DE LA CRUZ, demandados y apelados.

Número 11152.

*Sometido:* 3 de mayo de 1954. *Resuelto:* 31 de agosto de 1955.

*Antonio J. Amadeo,* abogado del apelante; *Miranda Esteve & Martínez Álvarez,* abogados de los apelados.

## SENTENCIA

Se desestima por falta de jurisdicción el recurso de apelación establecido contra la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de San Juan, con fecha 29 de diciembre de 1952, en el caso de epígrafe.

Así lo pronunció y manda el Tribunal y firma el Sr. Juez Presidente. El Juez Asociado Sr. Belaval emitió opinión por separado.

A. C. SNYDER,
*Juez Presidente.*

Certifico:

IGNACIO RIVERA,
*Secretario.*

---

### Opinión del Juez Asociado Sr. Belaval.

En este caso, nuestro Tribunal ha decidido declararse sin jurisdicción, porque el caso ha debido llegar ante nos por vía de *certiorari* y no por vía de apelación. No es este el momento más propicio para hacer la exégesis de un legalismo dogmático ante el cual puede fallar el espíritu de toda una reforma. Entiendo que el Tribunal está equivocado y que este caso es totalmente distinto a los que hemos resuelto hasta ahora sobre este punto, por las siguientes razones:

Este caso se originó en la anterior Corte Municipal de San Juan, radicándose la demanda el 24 de mayo de 1945. La Corte Municipal dictó sentencia el 24 de abril de 1946 y el caso fué apelado para la anterior Corte de Distrito de San Juan el 30 de abril de 1946. De manera pues que el caso estaba pendiente en la anterior Corte de Distrito de San Juan, cuando se aprobó la Ley núm. 432 de 15 de mayo de 1950 ((1) pág. 1127), Ley estableciendo la Ley Orgánica de la Judicatura de Puerto Rico.

La sección aplicable a los casos pendientes es el art. 38 de la Ley 432 de 15 de mayo de 1950, que disponía lo siguiente:

"Artículo 38.—Acciones Pendientes.—Todas las acciones, *procedimientos, recursos,* causas y asuntos civiles y criminales de toda clase, radicados, o pendientes para la fecha en que entre en vigor esta Ley en las cortes de paz, cortes municipales, incluyendo el Tribunal Municipal de la Capital, cortes de distrito, incluyendo el Tribunal de Distrito Judicial de San Juan, Corte para Niños y Cortes de Apelación de Suministros que quedan por la presente abolidos, seguirán ventilándose ante la sala o sección correspondiente del Juzgado de Paz, Tribunal Municipal o Tribunal de Distrito de Puerto Rico, Tribunal Tutelar de Menores o Tribunal de Apelación de Suministros, según fuere el caso, a los cuales y a los jueces de cuyas salas y secciones se confiere jurisdicción expresa para conocer y seguir conociendo de tales acciones, procedimientos, causas, recursos y asuntos hasta su resolución final de acuerdo con la legislación vigente al tiempo de su radicación."

Como se ve, para los asuntos pendientes, la Ley núm. 432 estableció el principio que dichos asuntos pendientes debían seguirse hasta resolución final *de acuerdo con la legislación vigente al tiempo de su radicación*, o sea, en este caso, la legislación vigente al 24 de mayo de 1945.

La sentencia del Tribunal Superior se dictó el 29 de diciembre de 1952 y fué apelada ante este Tribunal, después de denegada la reconsideración, en tiempo oportuno, el 13 de febrero de 1953, o sea, después de aprobada la Ley núm. 11 de 24 de julio de 1952 ((2) pág. 31), Ley de la Judicatura del Estado Libre Asociado de Puerto Rico.

La sec. 14 de la Ley núm. 11 de 24 de julio de 1952 dispone que "las sentencias finales y resoluciones del Tribunal Superior que hasta el presente podían ser apeladas del Tribunal de Distrito podrán ser apeladas al Tribunal Supremo de acuerdo con los términos y condiciones establecidos por ley y de conformidad con las reglas de procedimiento establecidas por el Tribunal Supremo . . . ."

Como las sentencias dictadas por las anteriores cortes de distrito en apelación de las anteriores cortes municipales, podían ser apeladas ante este Tribunal, si la cuantía envuelta era mayor de 300 dólares, creo que tenemos jurisdicción en este caso para resolverlo.

Pero aún aplicando el dudoso método de la llamada intuición judicial, tal vez ha debido considerarse esta apelación como un recurso de certiorari, puesto que la resolución del mismo por la ilustrada Sala sentenciadora, descansó totalmente en una cuestión de derecho. Creyendo como creo que el Tribunal tiene facultad para haber resuelto en una forma o en otra este caso, dejaría de cumplir con mi deber judicial si no examinara los méritos de la cuestión propuesta. Veamos:

El día 9 de enero de 1924 doña Adriana de la Cruz viuda de Iglesias constituyó una hipoteca a favor de doña Ángela Figueroa Reyes, por un precio aplazado de $428 que se comprometió a satisfacer "en el plazo de cuatro años a contar

desde el día quince del mes actual, pagando, *mientras esté pendiente esta deuda,* en el propio domicilio de la acreedora, el interés del nueve por ciento anual por mensualidades vencidas". La hipoteca se constituyó para "la seguridad del cumplimiento en el pago del precio aplazado, *sus intereses* y un crédito adicional de ciento cincuenta dólares para costas, gastos y honorarios de abogado."

La señora Adriana de la Cruz Viuda de Iglesias pagó intereses sobre dicha hipoteca hasta el día 30 de noviembre de 1930 pero no pagó el capital. Después del 30 de noviembre de 1930 dejó asimismo de pagar los intereses de la hipoteca. El día 5 de febrero de 1945, la acreedora hipotecaria doña Ángela Figueroa Reyes cedió al demandante y apelante en este caso, el crédito hipotecario y los intereses pendientes de pago.

El 19 de abril de 1945, don Ramón Valcourt Questel presentó en la anterior Corte de Distrito de San Juan un procedimiento ejecutivo hipotecario contra los demandados y apelados en este caso, como herederos de doña Adriana de la Cruz viuda de Iglesias, reclamando las siguientes cantidades:

| | |
|---|---|
| Capital del préstamo | $428.00 |
| Contribuciones pagadas | 622.16 |
| Crédito para costas | 150.00 |
| | $1,200.16 |

Como se observará no se reclamaron intereses de clase alguna en el procedimiento ejecutivo hipotecario.

La razón que alega el apelante para no haber reclamado dichos intereses es que los mismos no estaban garantizados por la hipoteca. Entendiéndolo así, presentó otra acción en cobro de dinero en la anterior Corte Municipal de San Juan, reclamando intereses legales desde el 1ro. de noviembre de 1930 hasta el 30 de abril de 1945, ascendentes a $370.12 más las costas y gastos de este pleito. La anterior Corte Municipal de San Juan dictó sentencia a favor del demandante y apelante. Apelado el caso ante la anterior Corte de Distrito

de San Juan, los demandados y apelados presentaron una moción de sentencia sumaria acompañada de las constancias del procedimiento ejecutivo hipotecario, alegando que la escritura de hipotèca, cuya ejecución se siguió hasta su terminación en el procedimiento ejecutivo hipotecario, garantizaba hipotecariamente los intereses devengados por el préstamo y que dichos intereses fueron voluntariamente excluídos del procedimiento por el demandante y apelante.

El día 29 de diciembre de 1952 la Sala de San Juan del Tribunal Superior de Puerto Rico, sucesora de la anterior Corte de Distrito de Puerto Rico, Sección de San Juan y de la anterior Corte de Distrito de San Juan, dictó sentencia declarando con lugar la moción de sentencia sumaria. La ilustrada Sala sentenciadora, aplicando el caso de *Díaz* v. *Quiñones*, 68 D.P.R. 249, (*De Jesús*), (1948), cita precisa a la pág. 258, resolvió que el demandante y apelante "tenía derecho a percibir, como consecuencia de la hipoteca por él adquirida, los intereses pactados por las partes y que fueron hipotecariamente garantizados, sin que en cuanto a la cantidad de dichos intereses hubiera limitación alguna, *ya que cuando no existen terceros*, son reclamables contra el deudor original todos los intereses devengados y como consecuencia pudieron y debieron incluirse en el ejecutivo sumario".

La ilustrada Sala sentenciadora estuvo en lo correcto al resolver el caso en la forma que lo hizo. La hipoteca se constituyó para garantizar además del capital y del crédito adicional, intereses al nueve por ciento *mientras estuviera pendiente la deuda*. Pero aunque no lo hubiera dicho, los intereses credituales no se extinguen por el vencimiento de la deuda, cuando no hay terceros envueltos. Tampoco es necesario que se especifique numéricamente el montante de la garantía hipotecaria por intereses. Notamos, sin embargo, ciertas contradicciones en nuestra jurisprudencia con relación a este asunto, que nos obligan a examinar otra vez la cuestión.

En el caso de *Altuna* v. *Ortiz et al.*, 12 D.P.R. 330, (*Quiñones*), (1907), cita precisa a las págs. 340 y 341, interpre-

tando el art. 147 de la Ley Hipotecaria para las Provincias de Ultramar de 1893, establecimos el principio que un acreedor hipotecario puede repetir contra los bienes hipotecados por el pago de los intereses devengados después del vencimiento de la hipoteca, hasta el total reintegro del capital, cuando no hubiere terceros. En caso de terceros, o sea, compradores o acreedores hipotecarios posteriores que hubieren comprado u obtenido un crédito hipotecario de acuerdo con los libros del Registro de la Propiedad, sólo pueden cobrarse con perjuicio de tercero, los intereses de los dos últimos años transcurridos y la parte vencida de la anualidad corriente. Dicha decisión está en armonía con la mejor doctrina hipotecaria. Pero no había de durar mucho tiempo.

El caso que parece haber creado la confusión es el caso de *Goico v. Rodríguez et al.*, 28 D.P.R. 530, (*Hutchison*), (1920), cita precisa a las págs. 534–536. En primer lugar el Juez Ponente en vez de aplicar el art. 114 de la Ley Hipotecaria de Puerto Rico, aplicó una sentencia de la Corte Suprema de Estados Unidos, extractada de 15 R.C.L. 22, que dispone:

"Está bien establecido que el tipo convencional de intereses será permitido después de vencida la obligación cuando existe estipulación en este sentido, y también ha sido frecuentemente resuelto que tal tipo puede permitirse aun en ausencia de un convenio expreso en tal sentido cuando de los términos de la obligación misma interpretados debidamente resulta enteramente manifiesto que ésta fué la intención de las partes, como por ejemplo en el caso de un pagaré pagadero un día después de la fecha, o un pagaré pagadero a su presentación, con intereses convenidos. Sin embargo, cuando no hay nada que indique la intención de las partes en el contrato y la cuestión no está resuelta por prescripción del estatuto, las autoridades están en conflicto respecto a si será o no concedido el tipo convencional o legal después del vencimiento. Según un número de decisiones el tipo convencional de interés seguirá después del vencimiento lo mismo que antes a falta de alguna estipulación hecha por las partes. Por otro lado las cortes en un número de Estados sostienen que bajo tales circunstancias el tipo legal de interés y no el tipo convencional será permitido después del vencimiento. Ésta es la regla

generalmente aplicada por la Corte Suprema de los Estados Unidos pero ese tribunal ha resuelto *que la cuestión es siempre de ley local* y que cuando se ha establecido una regla diferente rige en esa localidad. Tiene bastante fundamento el argumento de que cuando el contrato nada dice en cuanto al tipo de interés después del vencimiento debe permitirse el tipo legal. Aquéllos que sostienen una teoría distinta alegan que es una presunción de las partes el que el tipo anterior estipulado deba continuar después del vencimiento; pero esto se opone a la regla de que después que se ha dejado de verificar el pago el interés se da entonces no de acuerdo con el contrato sino en concepto de daños y perjuicios y entonces la regla referente a daños, el tipo legal de interés, debe regir." (Subrayado nuestro.)

En cuanto a la ley local aplicó los arts. 1067, 1068, 1075, 1076 y 1141 del Código Civil de Puerto Rico de 1902, (ed. de 1911), referentes a la mora, equivalentes a los arts. 1053, 1054, 1061, 1062 en parte, 1127 del Código Civil de Puerto Rico, (ed. de 1930), que disponen:

"Artículo 1053.—*Incurren en mora los obligados* a entregar o hacer alguna cosa *desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento* de su obligación.

"No será, sin embargo, necesaria la intimación del acreedor para que la mora exista:

"1—Cuando la obligación o la Ley lo declaren así expresamente.

"2—Cuando de su naturaleza y circunstancias resulte que la designación de la época en que había de entregarse la cosa o hacerse el servicio, fué motivo determinante para establecer la obligación.

"En las obligaciones recíprocas ninguno de los obligados incurre en mora si el otro no cumple o no se allana a cumplir debidamente lo que le incumbe. Desde que uno de los obligados cumple su obligación, empieza la mora para el otro.

"Artículo 1054.—Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieran en dolo, negligencia o morosidad y los que de cualquier modo contravinieren el tenor de aquéllas.

"Artículo 1061.—Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario,

consistirá en el pago de los intereses convenidos, y a falta de convenio, en el· interés legal.

"Mientras no se fije otro por el gobierno se considerará como legal el interés del 6 por 100 al año.

"Artículo 1062.—Los intereses vencidos devengan el interés legal desde que son judicialmente reclamados, aunque la obligación haya guardado silencio sobre este punto.

"En los negocios comerciales se estará a lo que dispone el Código de Comercio.

"Artículo 1127.—Si la deuda produce interés, no podrá estimarse hecho el pago por cuenta del capital mientras no estén cubiertos los intereses."

Con vista a este articulado y a la cita inmediatamente antes transcrita, el ilustrado Juez Asociado señor Hutchison concluyó, que cuando en una obligación de hipoteca que devengue intereses no se expresa el tipo de interés que deberá pagar el deudor después del vencimiento, el acreedor no podrá cobrar en tal caso otro tipo que el legal. Esta decisión es completamente errónea por dos razones principales: (1) el ilustrado Juez Ponente concluyó que el vencimiento de la obligación producía automáticamente el estado especial de mora y no diferenció entre el mero retraso (*mora inculpata*) o la tardanza sin mora y la mora propiamente dicha; (2) el ilustrado Juez Ponente en vez de aplicar el estatuto especial referente a hipotecas, aplicó el estatuto general referente a obligaciones.

1—Cuando las partes no lo hayan pactado expresamente, el vencimiento de la obligación no produce la mora, lo que produce es el mero retraso o la tardanza sin mora. Comentando el art. 1100 del Código Civil de España, equivalente al art. 1053 de nuestro Código Civil, dice Scaevola: ". . . si en algo ha habido conformidad de criterio acerca de esta materia, ha sido en no creer que el vencimiento del término baste por sí solo para producir la morosidad del deudor. . . . Desde que llega el término de una obligación empieza el retraso del cumplimiento. Pero si por cualquiera razón el acreedor ha concedido al deudor su benevolencia, o si ésta se presume de

hechos o motivos legales suficientes, hay retraso y no hay mora." 19 Scaevola—Código Civil 454, 451 (ed. de la Legislación Española de 1902).

Comentando el mismo artículo, dice Manresa: ". . . la mora supone la idea de retraso, de dilación en el cumplimiento de las obligaciones; en suma, el incumplimiento de éstas en el aspecto del tiempo. Es de notar y tiene importancia teórica y práctica que *la constitución en mora se diferencia del simple retraso*, porque presupone el comienzo de un estado especial de éste, la declaración por decirlo así, más precisa y solemne de que aquélla empieza y que también comienza con ella a surtir el retraso los efectos que de la misma son propios, *haciéndose, por tanto, necesario determinar cuándo aparece la mora*, y con arreglo al origen de tal declaración cabe distinguirla, según proceda de la ley, del convenio o de la reclamación del deudor": 8 Manresa: Comentarios al Código Civil Español 125 (ed. del Instituto Editorial Reus de 1950).

Castán en su obra, Derecho Civil Español Común y Foral, define la mora como el retardo culpable: ". . . en sentido lato, se entiende por mora o demora el retraso en el cumplimiento de la obligación. Pero en sentido propio y jurídico *sólo es mora* el retardo culpable" . . .: 3 Castán—Derecho Civil Español, Común y Foral 140 (ed. del Instituto Editorial Reus 1954).

¿Cuándo es que el mero retraso o la tardanza sin mora se convierte en mora? Cuando el acreedor exija judicial o extrajudicialmente el cumplimiento de su obligación, dice el art. 1053 de nuestro Código. Mientras el acreedor no hace este acto afirmativo, el deudor queda cubierto por la presunción de la benevolencia del acreedor para su deudor: 19 Scaevola 451, último párrafo, (obra y edición citadas); 3 Castán 142 (obra y edición citadas). No existe duda en cuanto a la transformación del mero retraso en mora cuando se trata de la intimación judicial. La mora empieza a contar desde que se radica la demanda si se trata de cantidades líquidas y exigibles o desde que se dicta sentencia si se trata de canti-

dades ilíquidas o indeterminadas, cuyo montante deba determinar la Sala sentenciadora: 3 Castán 141 (obra y edición citadas).

La duda puede surgir cuando se trate del comienzo de la mora por gestión extrajudicial. No toda gestión extrajudicial del acreedor produce el estado especial de mora, desde el cual empieza a contar la indemnización debida al acreedor y en caso de obligaciones dinerarias, el interés que representa el daño figurativo. No hay unanimidad de pareceres entre los comentaristas en cuanto a la forma en que debe hacerse la intimación o interpelación al deudor. Pero todos advierten que debe ser más que una simple gestión de cobro. Castán, recogiendo la versión de Enneccerus, apunta el envío de la cuenta con recibí o de una expedición a reembolso, pero recoge la advertencia de Valverde que "no sería intimación un simple recuerdo particular o un acto que no puede calificarse de exigencia de pago, puesto que lo que desea el Código es que se demuestre haber acabado la tolerancia o benevolencia del acreedor": 3 Castán 142 (obra y edición citadas); Puig Peña después de considerar suficiente el envío de la cuenta con recibí, una carta, un telegrama y aun una simple petición verbal, advierte: "siempre habrá que tener en cuenta, sin embargo, que la interpelación tiene una naturaleza de declaración de la voluntad recepticia, y por tanto, no empezará la mora hasta que efectivamente esa declaración llegue a conocimiento del deudor. Por eso en la práctica es la más frecuente la interpelación notarial, ya que consta expresamente por documento auténtico que el deudor, llega a conocer el cambio de voluntad del acreedor": 4–1 Puig Peña —Tratado de Derecho Civil Español—226–227 (ed. de la Revista de Derecho Privado de 1951).

Como se ve, no se puede hacer descansar el momento en que el deudor incurre en mora, en el vencimiento de la obligación. Aceptándose hoy como se acepta, no sólo la mora del deudor sino la del propio acreedor, la renuncia de la mora por prórroga tácita acordada entre el deudor y el acreedor,

la concurrencia de moras y aun la remisión de la mora después de la intimación, es difícil si no imposible, determinar, aun en las obligaciones dinerarias, por el simple transcurso del período del incumplimiento, la culpa del deudor que es la que sirve de base a la mora.

La importancia que tiene esta diferenciación entre el mero retraso y la mora, es que el deudor no sufre los efectos de la mora cuando se halla en retraso por una causa excusable: 2 Giorgi—Teoría de las Obligaciones 86, ed. de la Editorial Reus de 1928. Puig-Peña cree que debe sufrirlos, aunque llama la atención a la sentencia del Tribunal Supremo de España que sostiene lo contrario: "Al ser la tardanza sin mora un incumplimiento impropio por afectar simplemente al momento de pago, no debe producir más consecuencias que la indemnización de daños y perjuicios complementarios. Según una Sentencia del Tribunal Supremo (21 de mayo de 1904) *ni aun siquiera eso*, pues el art. 1101 [1054 del Código Civil de Puerto Rico] está subordinado a la existencia real de la mora, y no procede, por tanto, la indemnización de no existir ésta. Este criterio del Tribunal Supremo se sostiene por algún sector de la doctrina. . . . Pero este criterio lo consideramos poco acertado. En primer lugar, el hecho de que el acreedor no interpele no significa aquiescencia; puede haber imposibilidad o simple espera, anhelando evitar un mal mayor; y en segundo término, no cabe duda que hay incumplimiento, y éste puede producir daños, y no hay razón moral ni jurídica que prohiba reclamar la indemnización correspondiente. Además, incluso desde el punto de vista legal, no hay obstáculo a esta tesis, pues el artículo 1101 citado en la sentencia referida, no habla de 'mora' sino de 'morosidad', palabras que no deben envolver el mismo significado interpretándolas correctamente": 4–1 Puig-Peña, Tratado de Derecho Civil Español—221–222, (ed. citada). (Corchete nuestro.) Las palabras del ilustre comentarista resultan acertadas, en cuanto a sus implicaciones equitativas, cuando las aplicamos a la presunta mora del deudor, pero no resultan

tan acertadas cuando las contrastamos con la posible mora del acreedor. De todos modos, se puede afirmar en términos generales, que no todo incumplimiento de la obligación resulta culpa del deudor, y que la forma más viable de descubrir las motivaciones del incumplimiento, no es presumirlas de antemano, sino esperar la prueba correspondiente antes de su declaración judicial. Vide además: 11–I Enneccerus-Lehmann—Derecho de Obligaciones—261–263, ed. de la Librería Bosch de Barcelona de 1933).

2—El otro error evidente que cometimos al resolver el caso de *Goico* v. *Rodríguez et al.*, fué aplicar las disposiciones del art. 1053 y siguientes del Código Civil, referentes a la mora a una ejecución de hipoteca por la vía ordinaria. Lo que hemos debido aplicar eran las disposiciones del art. 114 de la Ley Hipotecaria de Puerto Rico. En caso de la hipoteca, la ley establece una garantía adicional para los intereses devengados después del vencimiento de la obligación, "una prórroga tácita del plazo contractual" lo llama Roca Sastre, una especie de hipoteca tácita, sin término de duración definido, cuando no hay terceros y por el término de la parte vencida de la anualidad corriente y dos anualidades más como tope máximo, cuando hay terceros. Dice Roca Sastre: "Cuando después de constituída la hipoteca no se hayan otorgado actos de enajenación o gravamen de la finca hipotecada rige el primer sistema, o sea, que la garantía hipotecaria actúa en beneficio de todos los intereses impagados y no prescritos. Mientras no haya tercero que pueda resultar perjudicado—dice la exposición de motivos de la Ley de 1861"—[de la cual se tomó la de Puerto Rico] "conserva toda su fuerza la regla de que *es extensiva la hipoteca a la seguridad de todos los intereses.*" (Subrayado y corchete nuestros.)

"Confirma esta norma el mismo artículo 114 de la Ley, el cual sólo establece el tope máximo de intereses asegurados hipotecariamente en cuanto se trate de evitar perjuicios a tercera persona. El artículo 146 [147 nuestro] admite la ejecución hi-

potecaria para el cobro de todos los intereses vencidos, y sólo ante un tercero interesado detiene dicha ejecución por los que excedan del máximo legal . . . Creemos que los intereses credituales garantizados por ministerio de la ley con la hipoteca, tanto pueden ser los devengados durante el plazo contractual del débito como los posteriores al vencimiento del mismo.

"La Rica no lo entiende así, pues dice que, si no hay pacto que lo contradiga, se aseguran en perjuicio de terceros dos años y la parte vencida de la anualidad corriente, o sea, tres años, pero siempre que el plazo de la hipoteca sea igual o superior a los tres años, pues si fuere menor, no podrán asegurarse más intereses que los del tiempo de duración del contrato.

"Esta opinión no puede prevalecer, porque el artículo 114 no distingue entre unos y otros, ya que se refiere a los intereses credituales en general *y tanto lo son los que se devengan antes del vencimiento del débito como los que se devenguen después*, puesto que éstos *se producen en un período de prórroga tácita del plazo contractual.* Dicho artículo 114 habla de las dos últimas anualidades de intereses y de la parte vencida de la anualidad corriente, y por tanto, reuniendo esta condición los intereses debidos, *no hay que discriminar si los mismos estaban dentro o fuera del plazo contractual.* Si no fuera así, la ley más bien impulsaría a ejercitar la acción ejecutiva, dificultando el alivio que para el deudor significa la tolerancia del acreedor a no reclamar la devolución del préstamo, perturbando con ello el crédito territorial." Roca Sastre: IV Derecho Hipotecario 335–338, (ed. de la Casa Editorial Bosch de 1954). (Corchete nuestro.)

Ésta fué la doctrina seguida por este Tribunal en el caso de *Altuna* v. *Ortiz et al.*, supra, en el 1907. Ésta ha sido la doctrina del Tribunal Supremo de España (véase Sentencias del 17 de octubre de 1932 y 18 de marzo de 1946).

Después de las decisiones de *Altuna* v. *Ortiz et al.*, (1907) y de *Goico* v. *Rodríguez et al.*, (1920), se resuelven varios casos más, siguiendo indistintamente la teoría de uno y otro de los casos originales, como si pudieran usarse indistintamente. En el caso de *Figueroa Rodríguez* v. *Ramírez*, 36 D.P.R. 917 (*Del Toro*) (1927), cita precisa a las págs. 919 y 920, se aplica el art. 114 de la Ley Hipotecaria y su aplicación resulta correcta. En el caso de *Caraballo* v. *Regis-*

*trador*, 48 D.P.R. 923 (*Hutchison*) (1935), cita precisa a la pág. 925, se aplica el art. 1061 del Código Civil de Puerto Rico y su aplicación resulta incorrecta.   Además se hace referencia a la sentencia del 7 de junio de 1922 del Tribunal Supremo de España—156 Jurisprudencia Civil 464—que es obviamente un caso de mora judicial—intereses después de la interposición de la demanda—referentes a un préstamo sin hipoteca, y se aplica incorrectamente el mismo principio a un caso de hipoteca por intereses devengados después del vencimiento.   En el caso de *Figueroa* v. *Boneta*, 58 D.P.R. 811, (*Del Toro*) (1941), cita precisa a la pág. 817, el Juez del Toro, quien había resuelto lo contrario en el caso de *Figueroa Rodríguez* v. *Ramírez*, aplicando el art. 114 de la Ley Hipotecaria, aplica en *Figueroa* v. *Boneta* los artículos de la mora y las decisiones de *Goico* v. *Rodríguez et al.*, y *Caraballo* v. *Registrador*, y el caso resulta erróneamente resuelto en cuanto al extremo concernido.

En el 1946, el Juez de Jesús al resolver el caso de *Torres* v. *Fernández*, 65 D.P.R. 622, (1946), cita precisa a las págs. 627–633, hizo un extenso y excelente estudio de la cuestión y volvió a restablecer el principio de la aplicabilidad del art. 114 de la Ley Hipotecaria a toda cuestión de intereses hipotecarios, que había consagrado tanto el caso de *Altuna* v. *Ortiz et al.*, (1907) como el caso de *Figueroa Rodríguez* v. *Ramírez*, (1927).

Posteriormente otros jueces han utilizado indistintamente el principio del caso de *Figueroa* v. *Boneta* (1941) que aplicaba a intereses hipotecarios los artículos de la mora después del vencimiento de la hipoteca y el principio del caso de *Torres* v. *Fernández*, (1946), que aplicaba a intereses hipotecarios la hipoteca tácita especial del art. 114 de la Ley Hipotecaria, sin percatarse que entre ambos principios, hay un irreconciliable conflicto en cuanto a la garantía adicional para intereses después del vencimiento de la hipoteca.   Véase entre otros *Arvelo* v. *Román*, 65 D.P.R. 743, (*Córdova Díaz*) (1946), cita precisa a la pág. 745 y *Buil* v. *Banco Popular de*

*P. R.*, 69 D.P.R. 254, (*Marrero*) (1948), cita precisa a la pag. 265. Como cuestión práctica la única mora que se concibe dentro del procedimiento ejecutivo hipotecario es la mora judicial, o sea, aquélla que se produce después de interpuesto el recurso: (Véase la Sentencia del Tribunal Supremo de España de 18 de marzo de 1946).

Resumiendo: los arts. 1053, 1054, 1061, 1062, 1127 del Código Civil de Puerto Rico no deben ser interpretados en el sentido que tan pronto vence una obligación de naturaleza civil, sobre la cual no se haya dispuesto otra cosa por el mismo Código, o no se haya pactado otra cosa por los contratantes, el deudor incurre en mora.

El mero retraso en el cumplimiento de una obligación es una situación de derecho distinta al "estado especial de mora". Para que el mero retraso se convierta en mora, se requiere la intimación del deudor por los medios judiciales o extrajudiciales reconocidos en derecho.

Cuando se trate de obligaciones garantizadas por hipoteca, en las cuales no se haya pactado un tipo de interés distinto a devengarse después del vencimiento de la obligación, los intereses pactados para ser pagados antes del vencimiento siguen rigiendo después del vencimiento y están hipotecariamente garantizados en virtud del artículo 114 de la Ley Hipotecaria de Puerto Rico, y es sólo en caso de perjuicio de tercero, que la hipoteca responderá después del vencimiento únicamente de los intereses correspondientes a la anualidad en transcurso y dos anualidades más.

Los artículos antes enumerados del Código Civil de Puerto Rico, referentes a la mora, no son aplicables a los intereses que devengue una obligación garantizada con hipoteca, y por el contrario, la ley aplicable es el artículo 114 de la Ley Hipotecaria de Puerto Rico.

Los casos de *Goico* v. *Rodríguez, et al.*, 28 D.P.R. 530; *Santos* v. *Crédito y Ahorro*, 41 D.P.R. 946; *Caraballo* v. *Registrador*, 48 D.P.R. 923; *Vázquez Vda. de McCormick* v. *Gutiérrez*, 52 D.P.R. 170; *Muñoz* v. *Nieves*, 53 D.P.R. 349;

*Figueroa* v. *Boneta*, 58 D.P.R. 811; *Arvelo* v. *Román*, 65 D.P.R. 743; *Buil* v. *Banco Popular*, 69 D.P.R. 254; *Vega* v. *García*, 61 D.P.R. 804, en todo lo que resuelvan, que las obligaciones civiles por el mero hecho del vencimiento devengan intereses de mora, antes de la intimación del deudor, y aplican a la exigibilidad de los intereses devengados después del vencimiento en las obligaciones hipotecariamente garantizadas, los artículos del Código Civil de Puerto Rico referentes a la mora y no aplican el art. 114 de la Ley Hipotecaria de Puerto Rico, deben ser expresamente revocados.

En el caso que nos ocupa, donde no hay ningún derecho de tercero envuelto, es claro que todos los intereses devengados estaban hipotecariamente garantizados y han debido ser incluídos en el procedimiento ejecutivo hipotecario. Por no haberlo hecho así, el acreedor ejecutante no puede ahora proceder al cobro de los mismos en una acción civil independiente, sin quedar sujeto a la regla procesal del fraccionamiento de la causa de acción. El art. 148 de la Ley Hipotecaria, en el cual descansa el demandante y apelante no es aplicable a los hechos jurídicos de este caso. Tal artículo presupone que el remate de la propiedad hipotecada no ha cubierto todas las cantidades hipotecariamente garantizadas, y por tanto, permite el recobro mediante acción ordinaria independiente del montante insoluto.

La sentencia debe ser confirmada.