# 2004 DTA 98

### TRIBUNAL DEL CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN
### PANEL IV

PROPPER INTERNATIONAL, INC.
Demandante-Apelante

v.

GENERAL ACCIDENT INSURANCE COMPANY, INC., ETC.
Demandadas-Apeladas

Núm. KLAN-03-01059

San Juan, Puerto Rico, a 30 de abril de 2004

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Ortiz Carrión y Rodríguez Muñiz

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 2 de septiembre de 2003, PROPPER International, Inc. presentó Recurso de Apelación en el que nos solicitó dejar sin efecto una Orden emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 8 de mayo de 2003 y notificada el 15 de mayo de 2003. Mediante dicha orden, el tribunal *a quo* denegó una petición de PROPPER International, Inc. para incluir el pago de intereses por mora a la sentencia emitida por éste el 7 de diciembre de 1999.

Por los fundamentos que expondremos a continuación, acogemos el recurso presentado como una Petición de *Certiorari*, **EXPEDIMOS** el auto y **CONFIRMAMOS** la orden recurrida.

### I

PROPPER International, Inc. (en adelante PROPPER) es una corporación dedicada a la manufactura de ropa militar, ropa civil, sombreros y gorras. Para la fecha de los hechos relacionados con este caso, PROPPER tenía centros de operaciones en Mayagüez y Cabo Rojo, un almacén de telas centralizado en Mayagüez y un almacén de telas obsoletas en Cabo Rojo.

Desde el 1984 hasta el 31 de agosto de 1991, PROPPER tuvo en vigor una póliza de seguro, *"Comercial Crime Coverage"*, expedida por General Accident Insurance Company para protegerse contra actos deshonestos cometidos por sus empleados. ██ El 31 de agosto de 1991, PROPPER cambió de aseguradora y mantuvo hasta el 31 de agosto de 1994, otra póliza de seguro por deshonestidad expedida por Preferred Risk Insurance Company con cubierta de $100,000.00 por ocurrencia y $900,000.00 de exceso.

El 17 de febrero de 1992, PROPPER descubrió el robo de telas en la compañía mediante una llamada anónima recibida y decidió realizar una investigación interna con la intervención de la policía. Como resultado de dicha investigación, el gerente general del almacén, el gerente de telas y varios empleados del almacén resultaron convictos por hurto.

Más tarde, PROPPER contrató a una firma independiente de contadores públicos autorizados, Diego Chévere y Asociados, para determinar la pérdida sufrida y reclamar dicha cantidad a las aseguradoras bajo las pólizas de *"Comercial Crime Coverage"*. El estudio realizado por Diego Chévere y Asociados determinó que la pérdida sufrida por el robo de telas fue de $1,219,759.35, de los cuales PROPPER reclamó $757,938.02 a Preferred Risk Insurance Company y $461,821.33 a General Accident Insurance Company por la pérdida de

materiales y ropa de segunda. Las aseguradoras, por su parte, contrataron a la firma de auditores Matson, Driscoll & Damico para examinar las cifras reclamadas.

Luego de un año de negociaciones infructuosas, el 15 de julio de 1993, PROPPER presentó Demanda por incumplimiento de contrato y daños y perjuicios contra General Accident Insurance Company (en adelante General Accident) y Preferred Risk Insurance Company (en adelante Preferred) en la que reclamó el pago de la pérdida sufrida ($1,219,759.35) más $250,000.00 en daños, costas, honorarios de abogado e intereses por temeridad. En la misma, PROPPER alegó que las aseguradoras incumplieron con el contrato de seguros al no pagar la reclamación correspondiente a la pérdida sufrida por los hurtos de mercancía perpetrados por sus empleados. El 23 de septiembre de 1994, luego de haber examinados todos los contratos existentes durante el período de la reclamación, PROPPER presentó moción para enmendar la cuantía de la pérdida reclamada a $2,300,000.00.

El 10 de diciembre de 1997, el Tribunal de Primera Instancia designó al Lcdo. Arnaldo López Rodríguez como Comisionado Especial para evaluar la prueba presentada por las partes y determinar la cuantía de la pérdida y la distribución de dicha pérdida entre las compañías aseguradoras.

El 15 de septiembre de 1998, Preferred consignó en el tribunal $37,700.00. En total, las co-demandadas consignaron $106,592.20 en pago de la reclamación. Estas determinaron dicha cantidad a base de los hurtos admitidos por los empleados convictos en 1992.

El 22 de junio de 1999, el Comisionado Especial designado presentó informe ante el Tribunal de Primera Instancia en el que detalló el método utilizado para determinar la pérdida atribuible al hurto de mercancía y valoró la misma en $2,207,182.11, de los cuales a General Accident le corresponde pagar $1,547,435.74 (62.2%) y a Preferred $659,746.37 (37.8%), menos $10,000.00 de deducible respectivamente. El Comisionado indicó que los actos de las aseguradoras constituyeron temeridad al limitar su posición a impugnar el informe presentado por PROPPER y no realizar un informe de valoración. Por lo que, recomendó la imposición de $5,000.00 a cada uno de honorarios de abogado y el pago de intereses por temeridad.

El 7 de diciembre de 1999, el Tribunal de Primera Instancia emitió sentencia mediante la cual adoptó en su totalidad el informe presentado por el Comisionado Especial, declaró Con Lugar la demanda y condenó a las co-demandadas al pago de $2,187,182.11, de los cuales General Accident debería pagar $1,537,435.74 y Preferred debería pagar $649,746.37. Además, de $5,000.00 de honorarios de abogado por temeridad e intereses por temeridad.

General Accident y Preferred acudieron ante este Tribunal mediante sendos recursos de apelación en los que solicitaron la revocación de dicha sentencia. ■ El 30 de abril de 2001, emitimos sentencia, notificada el 2 de mayo de 2001, en la que revocamos la determinación de temeridad y devolvimos el caso al Tribunal de Primera Instancia para dilucidar la controversia en cuanto a la partida de $338,085.24 por unos pantalones de segunda.

Inconformes, las aseguradoras acudieron ante el Tribunal Supremo, ■ quien el 10 de diciembre de 2002 emitió sentencia, notificada el 11 de diciembre de 2002, mediante la cual modificó nuestro dictamen para dejar sin efecto la devolución del caso al Tribunal de Primera Instancia, eliminar la concesión de indemnización por los pantalones de segunda ($338,085.24) y la imposición de honorarios de abogado por temeridad.

El 3 de enero de 2003, Preferred consignó en el Tribunal de Primera Instancia $614,190.62 en pago de la sentencia más intereses hasta el 31 de diciembre de 2002 y $353.10 en pago de intereses hasta el 3 de enero de 2003. El 15 de enero de 2003, PROPPER presentó moción en reparo a la consignación en la que alegó que la cantidad consignada por Preferred no incluyó los intereses por mora que el incumplimiento de la obligación

devenga desde la fecha de la pérdida hasta el pago final y que Preferred dedujo una partida por los pantalones de segunda, la cual sólo es atribuible a General Accident. Según PROPPER, Preferred adeudaba hasta esa fecha $984,110.86 en intereses desde el 17 de febrero de 1992, por tanto, el total adeudado por Preferred al 31 de diciembre de 2002 es $1,643,857.23. Por último, PROPPER solicitó el retiro de los fondos consignados sin que esto signifique que la consignación está correcta y fue aceptada.

El 26 de febrero de 2003, Preferred contestó la moción presentada por PROPPER en la que adujo que la pérdida por los pantalones de segunda ($338,085.24) era atribuible a ambas aseguradoras y que a base del por ciento utilizado para distribuir el total de pérdida, redujo dicha partida del total de la sentencia, según ordenado por el Tribunal Supremo. Preferred añadió que para que una parte tenga derecho a intereses por mora, éstos deben ser concedidos en la sentencia y que los intereses post-sentencia adeudados desde el 12 de julio de 1999 hasta el 31 de diciembre de 2002, eran $129,940.47.

El 28 de febrero de 2003, General Accident consignó en el Tribunal de Primera Instancia $1,612,706.12 en pago de la sentencia, según modificada por el Tribunal Supremo. El 28 de abril de 2003, PROPPER presentó una segunda moción en solicitud del retiro de los fondos consignados en la que indicó que ambas aseguradoras dedujeron el deducible de $10,000.00 de la cantidad consignada, el cual ya había sido ajustado de la cantidad determinada en la sentencia y solicitó el pago de intereses por mora y permiso para retirar la suma consignada en el tribunal como un abono al importe total de la sentencia con sus intereses sin que eso signifique que la consignación está correcta y que fue aceptada.

El 8 de mayo de 2003, el Tribunal de Primera Instancia emitió una orden, notificada el 15 de mayo de 2003, mediante la cual declaró No Ha Lugar el pago de intereses por mora, debido a que al momento de surgir la pérdida, la cantidad total de ésta no había sido determinada, no era líquida ni exigible, sino que la misma fue determinada mediante la sentencia emitida por el Tribunal Supremo y ordenó expedir un cheque por los fondos consignados a favor de PROPPER.

El 28 de mayo de 2003, PROPPER presentó moción en solicitud de reconsideración en la que alegó que desde el momento de la presentación de la demanda hasta la sentencia emitida por el Tribunal Supremo, la cuantía de la reclamación siempre fue la misma y que el informe del Comisionado Especial concedió entero crédito a la auditoría realizada por la firma de auditores contratada por la parte demandada y a base de dicha información fue que emitió su recomendación. El 4 de agosto de 2003, el Tribunal de Primera Instancia emitió orden, la cual fue notificada el 27 de agosto de 2003, en la que declaró Sin Lugar la moción de reconsideración.

El 2 de septiembre de 2003, PROPPER acudió ante nos mediante recurso de apelación en el que nos solicitó dejar sin efecto la orden emitida por el Tribunal de Primera Instancia e imponer el pago de intereses por mora. PROPPER imputa al tribunal *a quo* la comisión de los siguientes dos errores:

*"1. Erró el tribunal apelado al determinar que la solicitud de pago de intereses por mora es improcedente en derecho.*

*2. Erró el tribunal apelado al determinar que la pérdida no estaba determinada."*

Por tratarse de una orden interlocutoria y no de una sentencia final, acogemos el recurso de apelación presentado como una petición de *certiorari*. ■

## II

El Derecho configura la morosidad como una modalidad de cumplimiento anormal que genera particulares consecuencias. Por morosidad, entendemos un concepto que engloba dos significados; en su sentido lato, mora es el retraso en el cumplimiento de una obligación, y en sentido propio y jurídico, sólo es mora el retraso

culpable en el cumplimiento, el cual no quita la posibilidad del cumplimiento tardío, porque si por consecuencia del retraso desaparece la posibilidad de poder cumplir la obligación, más que mora sería incumplimiento total. En síntesis, la mora supone el cumplimiento tardío de la obligación, José Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Tomo III, Madrid, Ed. Reus S.A., 1992, páginas 236-237; Eduardo Vázquez Bote, *Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño*, T. V, New Hampshire, Ed. Equity, 1991, página 230.

En el Derecho puertorriqueño sólo existen dos hipótesis en que es factible la moratoria judicial, éstas son, bajo las especiales circunstancias que representan las obligaciones recíprocas, en que la parte invoca la resolución por incumplimiento, o cuando disposiciones especiales conceden moratoria, Eduardo Vázquez Bote, *Tratado Teórico Práctico y Crítico de Derecho Privado Puertorriqueño*, *supra*, página 236.

Los requisitos necesarios para que pueda darse la mora del deudor son los siguientes: ■

*"1. Que sea una obligación dirigida a una prestación positiva (de dar o hacer), debido a que en las obligaciones de no hacer no existe la mora. Por tanto, la obligación no puede consistir en una omisión;*

*2. La obligación sea una exigible, vencida y determinada (líquida). Es decir, que ya sea por la naturaleza de la obligación o por haberlo requerido el acreedor, la deuda deba ser satisfecha. Aquí caben varias posibilidades, que las partes hayan acordado la fecha en que debe efectuarse la prestación como un factor esencial de la obligación, o que a pesar de no haber hecho tal consideración, el momento del cumplimiento sea igualmente esencial debido al tipo de obligación."*

No puede estimarse la morosidad de las obligaciones que consisten en el pago de una cantidad cuando la determinación de ésta dependa de un juicio previo encaminado a precisarla, de un peritaje, o de una liquidación de cuentas. Cuando las cantidades son líquidas y exigibles, la mora empieza a contar desde la presentación de la demanda, pero si las cantidades son ilíquidas o indeterminadas, cuyo montante deba ser determinado, la mora comienza desde que la sala sentenciadora emite la sentencia, *Valcourt v. Iglesias*, 78 D.P.R. 630, 638-639 (1955).

1. Que el deudor retarde culpablemente el cumplimiento de la obligación. Pero, si el retraso en el cumplimento deriva de circunstancias inimputables al deudor, no existe mora, ya que el deudor no sufre los efectos de la mora cuando el retraso es por una causa excusable, *Valcourt v. Iglesias, supra*, a la página 640.

2. El acreedor requiera el pago al deudor, ya sea judicial o extrajudicialmente, pues dice el Artículo 1053 del Código Civil puertorriqueño, 31 L.P.R.A. §3017, que *"incurren en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación."* No obstante, este artículo exime de dicho requisito *"cuando la obligación o la ley lo declaren así expresamente"* o *"cuando de su naturaleza y circunstancias resulte que la designación de la época en que había de entregarse la cosa o hacerse el servicio, fue motivo determinante para establecer la obligación".*

Los efectos de la mora deben distinguirse en consideración al tipo de obligación que sea. En las obligaciones de dar, los efectos de la mora del deudor son: (1) indemnizar al acreedor de los daños y perjuicios que la tardanza ocasione. Así lo determina claramente el Artículo 1054 del Código Civil, 31 L.P.R.A. Sección 3018, conforme al cual, *"quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas"*; y (2) responder de los riesgos, perecimiento y deterioros de la cosa, aunque puedan haberse producido por caso fortuito. El Artículo 1049 del Código Civil, 31 L.P.R.A. Sección 3013, señala que *"si el obligado se constituye en mora, o se halla comprometido a entregar una misma cosa a dos o más personas diversas, serán de su cuenta los casos fortuitos hasta que se realice la entrega."* Mientras

que en las obligaciones de hacer, la mora obliga únicamente a la indemnización de los daños y perjuicios. ■

Si la obligación consiste en el pago de una cantidad de dinero, la indemnización, si no hay pacto en contrario, consistirá en el pago de los intereses convenidos. Si no hay pacto relativo a intereses después del vencimiento del débito, lo único que cabe exigir, además de los devengados durante el plazo contractual, son los intereses legales desde la fecha en que el deudor incurrió en mora. Véase, Artículo 1061 del Código Civil, 31 L.P.R.A. Sección 3025; *Piovanetti v. Vivaldi,* 80 D.P.R. 108, 113-114 (1957). Los intereses por la demora no se deben hasta luego de la intimidación judicial o extrajudicial.

El concepto de intereses por mora es distinto al de intereses legales. Los intereses por mora surgen del Artículo 1061 del Código Civil, 31 L.P.R.A. Sección 3025, mientras que los intereses legales surgen de la Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. Apéndice III. ■ Los intereses legales, por disposición estatutaria, forman parte integrante de la sentencia y pueden ser recobrados aun cuando no estén mencionados en la misma. En ese caso, los intereses son considerados automáticamente como parte de la sentencia. El propósito de esta regla es promover que el deudor de una sentencia cumpla con prontitud los términos de ésta y compense expeditamente a la parte con derecho a ella. Estos intereses son concedidos, con el fin de desalentar la presentación de demandas frívolas, de evitar la posposición del cumplimiento de las obligaciones, y estimular el pago de sentencias en el menor tiempo posible. *Montañéz v. U.P.R.,* 156 D.P.R.___ (21 marzo 2002), **2002 J.T.S. 40**, a las páginas 858-859.

Pero los intereses por mora no están en la misma categoría. No constituyen parte integrante ni inseparable de la obligación principal, sino que son considerados como una indemnización independiente de daños y perjuicios, impuesta como penalidad por la demora en el pago, lo que constituye un derecho personal del acreedor. Contrario a los intereses legales, éstos no son una penalidad adherida automáticamente a la obligación principal por ministerio de ley, *P.R. & Ame. Ins. Co. v. Tribunal Superior,* 84 D.P.R. 621, 623 (1962); *Rivera v. Crescioni,* 77 D.P.R. 47, 55-56 (1954).

Los Artículos 1053, 1054, 1061 y 1062 del Código Civil, 31 L.P.R.A. Secciones 3017-3018, Secciones 3025-3026, no deben ser interpretados en el sentido que tan pronto vence una obligación de naturaleza civil, sobre la cual no hay disposición alguna, el deudor incurre en mora. No podemos afirmar en términos generales que todo incumplimiento de una obligación resulta culpa del deudor. La forma más viable de descubrir los motivos del incumplimiento, no es presumirlas de antemano, sino esperar la prueba correspondiente antes de su declaración judicial, *Valcourt v. Iglesias, supra,* a la página 641.

La doctrina ha explicado que para que exista mora es necesario que la obligación esté vencida y líquida. Una deuda está vencida cuando ha pasado el momento de su exigibilidad y es líquida cuando existe la certeza de lo debido. En el caso ante nos, PROPPER requirió a General Accident y a Preferred en julio de 1992, el pago de los daños ocasionados por el robo de telas. No obstante, dicha cantidad estaba en controversia. La cantidad no era líquida porque fue necesaria la celebración de un juicio para determinarla. No es hasta que el tribunal designa al Comisionado Especial que éste determina el valor real de la pérdida y el por ciento de responsabilidad atribuible a cada aseguradora. Anterior a eso, las partes no habían logrado llegar a un acuerdo al respecto. Por lo que no es hasta que el Tribunal de Primera Instancia emite sentencia que surge la obligación de las aseguradoras demandadas de pagar lo ordenado por éste a PROPPER. Por lo que los errores señalados por el peticionario no fueron cometidos. Luego de haber evaluado el derecho anteriormente expuesto y el expediente ante nos, concluimos, al igual que lo hiciera el Tribunal de Primera Instancia, que no procede la imposición de intereses por mora. El pago de intereses en este caso corresponde al pago de intereses legales post sentencia.

### III
En este caso, el Tribunal de Primera Instancia acogió el informe presentado por el Comisionado Especial y determinó que General Accident adeudaba a PROPPER $1,547,435.74, mientras que Preferred adeudaba

$659,746.37 y restó $10,000.00 de deducible a cada una de dichas cantidades indicadas en la sentencia. Por lo que General Accident tenía que pagar $1,537,435.74 y Preferred tenía que pagar $649,746.37.

Sin embargo, el informe del Comisionado Especial indicaba la existencia de 35,663 pantalones de segunda a un costo de $9.48, lo que suma $338,085.24. Dicha partida fue tomada en consideración al determinar el valor total de la pérdida y fue atribuida a ambas aseguradoras. No obstante, el 10 de diciembre de 2002, el Tribunal Supremo eliminó dicha partida. Por lo que la cantidad indicada en la sentencia del foro de instancia debe ser ajustada. El Tribunal de Primera Instancia imputó 62.2% de responsabilidad a General Accident y 37.8% de responsabilidad a Preferred. El 62.2% de $338,085.24 es $210,289.02 y el 37.8% de dicha cantidad es $127,796.22. Es decir, que a lo adeudado por General Accident ($1,537,435.74) hay que restarle $210,289.02, lo que da un total de $1,327,146.72 y a lo adeudado por Preferred ($649,746.37) le restamos $127,796.22, eso da un total de $521,950.15.

El 15 de septiembre de 1998, General Accident consignó en el tribunal $68,892.20 y Preferred consignó $37,700.00. Si a lo adeudado por cada una de las aseguradoras restamos dicha cantidad, General Accident tenía que pagar $1,258,254.52 por concepto de la sentencia más intereses legales al 8.75% desde 12-7-1999 al 2-28-2003, fecha en que consignó $1,612,706.12 en el tribunal. Mientras que Preferred adeudaba $484,250.15 por concepto de la sentencia más intereses legales al 8.75% desde 12-7-1999 al 1-3-2003, fecha en que consignó $614,543.72 en el tribunal.

## IV

En atención a lo anteriormente expresado, **EXPEDIMOS** el Auto de *Certiorari* y **CONFIRMAMOS** la Orden recurrida.

El Juez Rodríguez Muñiz impondría costas, gastos y honorarios de abogados y sanción económica de $1,000.00 a la parte peticionaria por entender que el recurso presentado es frívolo y temerario. Véase, Regla 85 B del Reglamento Transitorio del Tribunal Apelativo.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 98

1. Póliza #SMP-103762.

2. Casos KLAN-2000-00212 y KLAN-2000-00213.

3. Casos CC-2001-534 y CC-2001-541.

4. Véase, Regla 53 de Procedimiento Civil, 32 L.P.R.A. Apéndice III.

5. José Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Tomo III, Madrid, Ed. Reus S.A., 1992, páginas 238-240; Eduardo Vázquez Bote, *Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño*, T. V., New Hampshire, Ed. Equity, 1991, páginas 230-233.

6. José Castán Tobeñas, *Derecho Civil Español, Común y Foral, supra*, páginas 242-243; Eduardo Vázquez Bote, *Tratado Teórico Práctico y Crítico de Derecho Privado Puertorriqueño, supra*, páginas 234-235; José Puig Brutau, *Fundamentos de Derecho Civil*, Tomo I, Volumen II, Barcelona, Ed. Bosch, 1988, página 419.

■■■■■■■■■■■■■■■

**7.** La Regla 44.3 de Procedimiento Civil dispone en lo pertinente que: *"(a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia.*

*La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible."*